JOAN B. BERNSTEIN, Respondent, v BIRCH WATHEN SCHOOL, Appellant.

First Department, November 20, 1979

130

APPEARANCES OF COUNSEL

*Leonard R. Berson (Savrin & Berson,* attorneys), for appellant.

*Robert L. Ellis* for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

On or about April 7, 1978 plaintiff entered into an employment contract with defendant as a first grade teacher for the 1978-1979 school year. Plaintiff had been similarly employed for the previous seven years under a series of one-year contracts. The agreement provided that plaintiff's "primary responsibilities will be Grade One". At the time plaintiff signed the agreement, a coteacher was also assigned to the first grade.

When plaintiff failed to report on Monday, April 10, 1978, the first working day after signing the new contract, it was ascertained that she had entered a hospital by prearrangement, but without notice to defendant. When contacted, plaintiff advised that she would return to her class in two weeks, on April 24, 1978.

A review of the attendance records disclosed that as of mid-April plaintiff had been absent due to illness more than 60 days since the beginning of the 1976-1977 school year.[1] The headmaster also learned of other incidents involving plaintiff which led him to re-evaluate his plans for the first grade for the coming school year.

When plaintiff did not return to school on April 24, 1978, she was contacted at the hospital and advised defendant that she would remain out for another week. That same day, the

---

1. Plaintiff had sustained injuries from an accident in September, 1976, causing absences during the 1976-1977 and 1977-1978 school years.

headmaster informed plaintiff, by letter, that her position in Grade One for the 1978-1979 school year would be assistant teacher. The reassignment did not entail any change in hours or reduction in pay. The teacher's handbook, furnished to all of the staff, and with which plaintiff was familiar, provided that the headmaster and principals, at the beginning of each year, "will outline individual responsibilities for faculty members" and "[f]rom time to time * * * add or subtract responsibilities * * * as the need arises". Claiming that it was a demotion which would be injurious to her career, plaintiff refused to accept her assignment.

On June 29, 1978, shortly after the end of the 1977-1978 school year, this action for wrongful discharge was commenced. Plaintiff seeks recovery of $17,800 in damages for loss of salary and employment benefits under the 1978-1979 contract, and $75,000 in punitive damages.[2]

Except for admitting the existence of the employment contract, the answer consists of a general denial and several affirmative defenses, including repudiation and voluntary abandonment.

Prior to the commencement of this action plaintiff had applied for unemployment insurance benefits. By a determination dated June 14, 1978, the local employment office of the New York State Department of Labor found her "disqualified because of voluntary leaving of employment without good cause." Thereafter, on November 17, 1978, upon plaintiff's appeal of the initial determination, a hearing was held before an administrative law judge, at which both parties appeared. Subsequently, by decision dated November 29, 1978, the administrative law judge sustained the initial determination, and found that plaintiff's "refusal to accept duties which the headmaster assigned to her and terminated [sic] her employment rather than accept those duties constitutes a voluntary leaving of employment without good cause." Voluntary separation from employment without good cause is a ground for disqualification under section 593 (subd 1, par [a]) of the Labor Law. Plaintiff did not appeal the determination to the Appeal Board as is provided in section 621 of the Labor Law, and the administrative law judge's determination became "final on all questions of fact and law." (Labor Law, § 623.)

---

2. That part of the cause of action seeking punitive damages was dismissed, on an earlier motion, for a lack of showing of malice and is not an issue on this appeal.

■ Defendant then moved for summary judgment dismissing the complaint (CPLR 3212). It contended that plaintiff was collaterally estopped from relitigating the issue of the voluntariness of the termination of her employment and that the affirmative defense of repudiation and voluntary abandonment of the contract has been established as a complete defense to the action. We agree and therefore would reverse Special Term's denial of the motion and grant defendant summary judgment dismissing the complaint.

■ It is settled law that the principles of *res judicata* and collateral estoppel are applicable to the determinations of quasi-judicial administrative agencies and that such determinations, when final, become conclusive and binding on the courts. (See *Ogino v Black,* 304 NY 872; *Matter of Evans v Monaghan,* 306 NY 312; *Drier v Randforce Amusement Corp.,* 14 Misc 2d 362, affd 14 AD2d 772.)

In a leading case on the applicability of collateral estoppel the Court of Appeals held: "New York Law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling." *(Schwartz v Public Administrator,* 24 NY2d 65, 71.) (See, also, *Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481; *S. T. Grand, Inc. v City of New York,* 32 NY2d 300; *Molino v County of Putnam,* 29 NY2d 44.)

■ In sustaining the determination of the local office after hearing testimony and considering the matter, *de novo,* the administrative law Judge made the following specific findings: "It is significant that claimant was not being demoted and was to receive the same salary as she would have had not the different responsibilities been assigned. Furthermore, the differences in responsibilities were not of such material nature as to constitute a material change in job conditions. Claimant was to work the same hours and receive the same pay as she would have if she had performed the duties that she had in the past. It is further significant that the contract entered into between claimant and the employer indicated her primary responsibilities were grade one. Claimant voluntarily left her employment without good cause."

It is clear that the issue raised by the affirmative defense of

repudiation and abandonment is, in all respects, identical to the issue tried and resolved by the administrative law judge. Moreover, it is the single issue dispositive of all others in the case. Like all "issues of ultimate fact", once it has been "determined by a valid and final judgment, [it] cannot again be litigated between the same parties in any future lawsuit." *(Ashe v Swenson,* 397 US 436, 443.)

◼ The cases cited by plaintiff are not controlling. In both *Silberman v Penn Gen. Agencies of N. Y.* (63 AD2d 929), which was also relied upon by Special Term, and *A.B. Machine Works v Brissimitzakis* (51 AD2d 915), the former employees were granted unemployment benefits upon a finding that their employment terminated "under non-disqualifying conditions." In each case the issue before the agency was whether the employee was disqualified for unemployment benefits because of misconduct. (Labor Law, § 593, subd 3.) In the employees' wrongful discharge actions, these determinations were not given collateral estoppel effect against the former employer because other valid reasons may have justified their discharge. That an employee was awarded benefits because his termination was under nondisqualifying conditions did not necessarily imply that he was wrongfully discharged. As this court noted in *Silberman* (p 929): "An employee may be terminated for a cause that does not rise to the level of misconduct disqualifying him from unemployment benefits."

The same view was expressed by the Court of Appeals in *Matter of James (Levine)* (34 NY2d 491):

"Causes for discharge which do not attain the level of misconduct may not be used to render claimants ineligible for benefits" (p 498).

"There is no question that 'valid cause' for discharge must rise to the level of misconduct before an employee becomes ineligible to receive benefits. This, the division's regulations unequivocally expressed, in classifying, among other things, inefficiency, negligence, and bad judgment, as valid causes for discharge and which do not render the employee ineligible" (p 496).

And in *Matter of De Grego (Levine)* (39 NY2d 180, 184) the court noted: "[W]here the employee has not provoked discharge or engaged in misconduct he will be entitled to benefits despite the fact that the employer may have fired the em-

ployee for valid reasons * * * this possibility was 'designedly incorporated into the legislative scheme'."

The point is further underscored in *A.B. Machine Works v Brissimitzakis* (51 AD2d 915, 916, *supra*), where this court stated: "the matters in controversy between the parties here are so much broader than the very narrow issue which was before the referee, that his determination cannot possibly be considered a bar to the claim in this action. The defendant could have been awarded unemployment insurance even though his other arrangements with the plaintiffs caused his ouster. The referee held only that his 'employment terminated under non-disqualifying conditions'. Only such items as are necessarily determined in a prior proceeding are conclusive."

On the other hand, however, the issue of voluntary termination without good cause is dispositive of both plaintiff's unemployment benefits claim (Labor Law, § 593, subd 1, par [a]) and her action for wrongful discharge. "Voluntary leaving of employment" contemplates a termination of the employment relationship by the employee without good cause. *(Matter of James [Levine],* 34 NY2d 491, *supra.)*

*Walsh v Pluess-Staufer* (67 Misc 2d 885) is directly in point. Walsh's claim for unemployment compensation benefits was denied upon a finding that he voluntarily left his employment without good cause. In granting summary judgment to the employer in the wrongful discharge action the court held (p 888): "[T]he doctrine of collateral estoppel is properly invoked in respect of the issue as to plaintiff's voluntary termination of employment without cause and the first affirmative defense asserted in the answer is a complete defense to the action."

Nor is, as Special Term held, the doctrine of collateral estoppel inapplicable because the denial of unemployment benefits "necessarily involved nothing more than a determination that she was reasonably fitted by training and experience for certain alternative employment offered to her by defendant, but refused." Refusal, without good cause, of an offer of employment for which a person is reasonably fitted by training and experience is a disqualification under subdivision 2 of section 593 of the Labor Law.

The local office had rejected plaintiff's claim "because of voluntary leaving of employment without good cause." This was the determination reviewed by the administrative law judge who, after a hearing, reviewed the nature of plaintiff's employment; the terms of her contract; her injury and subse-

quent disability during the 1976-1977 and 1977-1978 school years; her reassignment by the headmaster to "assistant teacher"; the headmaster's reassignment authority, derived from the teacher's handbook, with which plaintiff was familiar; and the feasibility of such reassignment for the proper maintenance of the academic curriculum. After concluding that plaintiff voluntarily left her employment without good cause, the administrative law judge decided: "The initial determination is sustained." Thus, contrary to Special Term's holding, his determination is not susceptible of any interpretation that it was based on plaintiff's refusal to accept alternative employment. Nor may plaintiff's separation from employment and her refusal to accept the position of assistant teacher be considered as separate acts so as to lend plausibility to the argument that the administrative law judge might have predicated his finding on the latter. (Cf. *Matter of Crowe [Corsi]*, 280 App Div 427.)

Moreover, under the circumstances, even if refusal to accept alternative employment were the issue, whether plaintiff's rejection of the assistant teacher's position constituted justifiable refusal could only be determined by an analysis of the contract. Thus, the argument that in ruling on plaintiff's contractual rights and obligations, the administrative judge adjudicated on matters not necessary to his determination, thereby rendering the doctrine of collateral estoppel inapplicable, is without merit. Plaintiff's refusal to accept reassignment cannot be insulated from her voluntary leaving without good cause.

Accordingly, the order, Supreme Court, New York County (GROSSMAN, J.), entered March 22, 1979, denying defendant's motion for summary judgment dismissing the complaint, should be reversed, on the law, with costs and disbursements, and the motion granted.

BLOOM, J. (dissenting). Under successive one-year written contracts, plaintiff had been employed by defendant as a first grade teacher for some seven years. The last such contract covered the school year 1978-1979. Subsequent to the entry into the last contract, plaintiff was notified by defendant's headmaster that she would be reassigned as an assistant teacher. Plaintiff, feeling that the change in title and duties would be injurious to her career, refused to accept the reassignment. At the final faculty meeting for the 1977-1978 school year, the headmaster announced that plaintiff would

not be returning. Thereafter, plaintiff brought this action for breach of contract, contending that the change in the nature of her duties was so material as to constitute a breach of the agreement *(Rudman v Cowles Communications,* 30 NY2d 1; *Marks v Cowdin,* 226 NY 138; *Karas v H.R. Laboratories,* 271 App Div 530).

Prior to the commencement of this action, plaintiff made application for unemployment insurance benefits. The local employment office of the Department of Labor held that she was disqualified because she had voluntarily left her employment without just cause. On plaintiff's appeal from this determination, it was sustained by the administrative law judge.

The sole issue before us on this motion for summary judgment is whether the holding by the administrative law judge is a bar to this action under the doctrines either of *res judicata* or collateral estoppel. The rule has long since been settled that an administrative determination may act as a bar to further litigation of the same claim, or the same issue, even though placed in a different frame of reference *(Matter of Evans v Monaghan,* 306 NY 312). Whether the matter be one of claim preclusion *(res judicata)* or issue preclusion (collateral estoppel) the result is the same *(Miller Mfg. Co. v Zeiler,* 45 NY2d 956). The law proscribes a second bite at the apple. Thus, to meet the issue before us, we must determine whether the claim presented to the administrative law judge, or the issue presented to him, is the same as that posed by the contract action here in suit.

Under subdivision 1 of section 593 of the Labor Law, a person is disqualified for unemployment insurance benefits if she voluntarily leaves her employment. Subdivision 2 of section 593 infuses meaning into the term voluntary separation from employment by indicating that one who refuses to accept an offer of employment for which she is reasonably fitted by training and experience is, subject to certain limitations not here germane, disqualified from benefits. The administrative law judge, in holding that plaintiff's "refusal to accept duties which the headmaster assigned to her and terminated her employment rather than accept those duties constitutes a voluntary leaving of employment without good cause" did no more than rule that she refused a job for which she was qualified by training and experience and thus terminated her eligibility for unemployment insurance benefits. This, however, is a far cry from determining that the actions of defen-

dant in reclassifying plaintiff from teacher, first grade to assistant teacher first grade, did not breach the agreement between them. Indeed, the administrative law judge had no power to determine whether a contract existed between the parties, and, if so, whether either of the parties had breached it. In sum, his holding was, of necessity, limited to a determination of issues arising within the ambit of the unemployment insurance law. Issues arising in a breach of contract action are of a scope broader than those arising in a claim for unemployment compensation (A.B. Machine Works v Brissimitzakis, 51 AD2d 915), and they cannot be precluded by an unemployment insurance determination of voluntary termination.

It is most interesting to note that prior to the ruling of the administrative law judge, plaintiff moved for summary judgment in this action. Defendant vigorously opposed that motion and cross-moved for partial summary judgment striking plaintiff's claim for punitive damages. Defendant's cross motion was granted. In opposing plaintiff's motion, defendant asserted at least nine fact questions (only one of which touched upon the issue before the administrative law judge, i.e., whether or not plaintiff "voluntarily" abandoned her contract or was fired) which, it contended, precluded the granting of summary judgment. Special Term denied plaintiff's motion.

In the circumstances, we are constrained to hold that neither res judicata nor collateral estoppel bars plaintiff from further pursuing this action. Accordingly, we are of the opinion that the holding of Special Term denying defendant's motion for summary judgment should be affirmed.

MURPHY, P. J., and LUPIANO, J., concur with SULLIVAN, J.; BLOOM and ROSS, JJ., dissent in an opinion by BLOOM, J.

Order, Supreme Court, New York County, entered on March 22, 1979, reversed, on the law, and the motion for summary judgment dismissing the complaint granted. Appellant shall recover of respondent $75 costs and disbursements of this appeal.