■ JOHN A. HUNT, Respondent, v OSR CHEMICALS, INC., et al., Appellants. — In an action to recover damages for breach of contract, defendants appeal from a judgment of the Supreme Court, Nassau County (Pittoni, J.), entered January 2, 1981, which, after a nonjury trial, was in favor of the plaintiff in the principal amount of $153,594.07. Judgment affirmed, with costs. Plaintiff, along with the three other shareholders of defendant Oil Specialties & Refining Co., Inc., sold all of their shares in that corporation to OSR Chemicals, Inc., a holding corporation formed by defendant Ingber and one Edward Caplan for

the purpose of acquiring Oil Specialties. The transaction was accomplished by means of four interrelated contracts, all of which were executed in October, 1973. The first provided for the sale by each of the four Oil Specialties shareholders of all of his shares in that corporation to OSR. The second, between plaintiff and defendant Oil Specialties, provided that Oil Specialties would employ plaintiff as president for five years, to perform duties similar to those he had previously performed, including his duties as sales manager. The contract included a restrictive covenant binding for three years following the termination of plaintiff's employment. The third contract was between Green, the majority shareholder of Oil Specialties, and plaintiff. Its purpose was to induce Green to sell his shares to OSR pursuant to the terms of the first contract, and it provided that plaintiff would remain in Oil Specialties' employ until Green received from OSR the full purchase price of his shares. The fourth contract was in effect an agreement to amend the first contract. It provided for a certain reduction in the amount to be paid for the net worth of Oil Specialties, such reduction to be deducted pro rata from the payments made to the four former shareholders. Plaintiff alleged, and Special Term found, that defendants breached the first, second and fourth contracts, in that, *inter alia,* Ingber constantly interfered with plaintiff's prerogatives in managing Oil Specialties' sales operations and that OSR insisted on making further downward adjustments to the net worth of Oil Specialties which plaintiff believed were not justified. Such interference and continuing disputes subsisted until December, 1975, when plaintiff announced he was going away on vacation and that, when he returned, he expected OSR to drop its claims to the disputed net worth adjustments, or else at that time he would resign. Upon plaintiff's return, he was informed that the claim to the adjustments would not be dropped, and he resigned. Thereafter, plaintiff filed a claim for unemployment insurance benefits. A hearing was held before a referee, who found that plaintiff had not established good cause for leaving his employment and would therefore be ineligible to receive unemployment benefits from the time he left for vacation. The Unemployment Insurance Appeal Board modified the referee's decision by substituting the date plaintiff returned from vacation for the date he left as the date upon which he became ineligible to receive benefits. The Appellate Division, Third Department, affirmed the decision of the Unemployment Insurance Appeal Board by order dated March 16, 1978. In substance, the defendants' contentions for reversal are that Special Term erroneously found that they had breached the contracts, and that, in any event, the plaintiff is barred under the doctrine of collateral estoppel by the decision of the Unemployment Insurance Appeal Board, affirmed by the Appellate Division, Third Department. We find no error in the findings of Special Term with respect to the breaches of the contracts. Essentially, the findings were made as the result of the resolution by Special Term of issues of fact raised by the conflicting testimony of the parties and their witnesses. We are not disposed to disturb the determination of the credibility of such testimony (see *Kelly v Watson Elevator Co.,* 309 NY 49, 51; *Amend v Hurley,* 293 NY 587, 594). The issue of collateral estoppel requires greater consideration. In a proper case, a party in a subsequent litigation may be barred by a prior decision of an administrative agency under the rigor of collateral estoppel (*Bernstein v Birch Wathen School,* 71 AD2d 129, affd 51 NY2d 932; *Werth v Martin,* 79 AD2d 861; *BRC Elec. Corp. v Cripps,* 67 AD2d 899). There are, however, conditions which must be met before collateral estoppel applies: (1) an identity of issue necessarily decided in the prior proceeding which is decisive of the present action; and (2) a full and fair opportunity to contest the decision now said to be controlling (*Gilberg v Barbieri,* 53 NY2d 285, 291-292; *Schwartz v Public Administrator of*

*County of Bronx,* 24 NY2d 65, 71). We agree with Special Term that these criteria were not satisfied. The hearing before the referee was of short duration, consisting in the main of the plaintiff's testimony, and it is evident that the issues of the breach of contract litigated in this action were not treated adequately by the parties before the referee. Moreover, the plaintiff's claim before the referee was only against the corporation and not against the other defendants in this action. Of equal weight, the size of plaintiff's claim for unemployment insurance benefits pales in importance compared to plaintiff's claims involved here. *Bernstein v Birch Wathen School* (71 AD2d 129, affd 51 NY2d 932, *supra*) illustrates in contrast the proper application of collateral estoppel principles. There the single issue, whether the plaintiff had abandoned her job, was crucial in both the proceeding brought by her to obtain unemployment insurance benefits and her action for wrongful discharge. Here, as noted, complex issues relating to several intertwined contracts for the purchase of stock, indemnity for corporate liabilities, the status of plaintiff as a corporate officer, and inducement to sell stock based on the plaintiff's continued employment, were not and could not have been litigated before the referee. On the other hand, *Gilberg v Barbieri* (53 NY2d 285, 292-294, *supra*) teaches that the relative significance of the claims involved in each forum, the formality of the trial in each, and the time devoted in the trial in each, all bear on the acceptable use of collateral estoppel. Here, these factors weigh on the side of rejecting collateral estoppel. Moreover, in the light of the public policy of the State in the enactment of the statute granting unemployment insurance benefits (Labor Law, § 501), application for such benefits should not be discouraged by a rigid use of collateral estoppel under circumstances where, as here, other more important and complicated issues are entailed and cannot be determined in the administrative proceedings. For these reasons, we affirm. Hopkins, J. P., Mangano, Rabin and Cohalan, JJ., concur.