■ EDWARD C. RYAN et al., Respondents, v NEW YORK TELEPHONE COMPANY et al., Appellants and Third-Party Plaintiffs. CITY OF NEW YORK, Third-Party Defendant. — Order, Supreme Court, New York County (A. R. Tyler, J.), entered on January 7, 1982, affirmed for the reasons stated by A. R. Tyler, J., at Special Term. Respondents shall recover of appellants $75 costs and disbursements of this appeal. Concur — Sandler, J. P., Asch and Milonas, JJ.

Sullivan and Alexander, JJ., dissent in a memorandum by Alexander, J., as follows: I would reverse the order below and grant the cross motion of the defendants for partial summary judgment dismissing the first, second, third, sixth, and seventh causes of action and deny the plaintiff-appellant's motion to strike the affirmative defenses of res judicata and collateral estoppel. The plaintiff, Edward C. Ryan was suspended from his employment by the New York Telephone Company (Telco) in March of 1979, and was subsequently removed from the payroll in April of 1979, as a result of his having been apprehended leaving his place of employment on West 53rd Street, Manhattan, with electronic equipment of the type stored at Telco's West 53rd Street radio mobile shop. Ryan, however, contended that this equipment was his; that he had purchased it for use in connection with a project he had been working on at home for some time. Ryan contended that he had brought the equipment to his place of employment to have it examined by a co-worker who had previously given him advice and assistance in the development of the project. Ryan was arrested and charged with petit larceny and criminal possession of stolen property. As a result of his loss of job and the threat posed by the criminal prosecution, Ryan became depressed. Following his arraignment in April, 1979, he attempted suicide and had to be hospitalized for a period of approximately one month. His wife took time off from her job to care for him following his hospitalization and subsequently lost her job because of excessive absences. They were unable to maintain the payments on the mortgage on their home, were forced to sell it at a loss and ultimately had to apply for and receive welfare assistance. In July, 1979, Ryan agreed to an adjournment of the criminal charges against him in contemplation of dismissal (ACD) apparently believing that this was a favorable disposition of his case and would not prevent his being rehired by Telco. Significantly, he was represented by counsel in this proceeding. Later realizing that the ACD was not a favorable disposition, and that it would bar his being rehired by Telco, he retained new

counsel through whom he managed to have the case restored to the calendar. It appears that the District Attorney's initial opposition never reached the court, and the motion was granted "without opposition" over the District Attorney's belated opposition. Thereafter, and in January, 1980, as a result of the motion by the District Attorney to dismiss all charges against Ryan in the interest of justice and because proof of guilt beyond a reasonable doubt would be difficult in view of the "receipts" Ryan had produced, these criminal charges against him were dropped. In the meantime, Ryan's application for unemployment insurance benefits was rejected in June of 1979, on a finding that his dismissal from his employment had been the result of his own misconduct. He filed an appeal from this rejection and requested a hearing. Although advised of his right to have legal counsel represent him at the hearing, Ryan elected not to retain a lawyer, but to have a union official, one Charles McQueeny represent him. The first hearing was held in June of 1979, in Red Bank, New Jersey, as a convenience to Ryan. Because Telco was not represented at that New Jersey hearing, Ryan requested that a new hearing be scheduled in New York, so that a Telco representative could be present. It appears from the testimony Ryan gave at the Red Bank hearing that he was professing unfamiliarity with the actual meaning of "ACD", since he characterized it as an "acquittal" contemplating dismissal. At the subsequent hearing held in New York, both Ryan and a representative of the New York Telephone Company testified (Ryan again being represented by McQueeny rather than by an attorney) and the witnesses at that hearing were examined and cross-examined extensively. The administrative law judge sustained the disallowance of benefits, finding that Ryan "removed company property from the company premises" and was therefore "guilty of possessing company property without authorization". This determination was ultimately upheld by the Unemployment Insurance Appeal Board whose determination in turn was upheld by the Appellate Division of the Third Department in a CPLR article 78 proceeding brought by Ryan, seeking a reversal of the administrative determination. In March of 1980, Ryan commenced the instant action, alleging eight causes of action which asserted claims of false arrest, malicious prosecution, slander, wrongful discharge and various injuries allegedly sustained by Darlene Ryan, his wife, as a result of the actions of the defendants. The defendants interposed the affirmative defenses of *res judicata* and collateral estoppel, contending that the determination of the unemployment insurance claim adverse to Ryan barred relitigation of the issues resolved in that proceeding. Ryan moved to dismiss those affirmative defenses and defendants cross-moved to dismiss the first, second, third, sixth and seventh causes of action, which assert the claims of false arrest, malicious prosecution and wrongful discharge. Special Term granted the motion to dismiss the affirmative defenses and denied the defendants' cross motion to dismiss the challenged causes of action, finding that Ryan had not had a "real opportunity" to litigate his claims in the administrative proceedings and that under the totality of the situation it would be unfair to deny him his day in court. Special Term also found that Ryan raised sufficient issues of fact (presumably in respect to his possession of the equipment) to warrant a trial. These determinations were in error and should be reversed. The principles of *res judicata* and collateral estoppel are applicable to determinations of a quasi-judicial nature made by administrative agencies (*Bernstein v Birch Wathen School,* 71 AD2d 129, affd 51 NY2d 932). Application of these doctrines requires a finding that there was an identity of issues and a full and fair opportunity to contest the determination made by the administrative agency. (*Bernstein v Birch Wathen School, supra; see,* also, *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65.) The Court of Appeals has indicated in *Gramatan Home Investors Corp. v Lopez* (46 NY2d 481, 485), that: "Collateral

estoppel, together with its related principles, merger and bar, is but a component of the broader doctrine of *res judicata* which holds that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action (*Matter of Shea,* 309 NY 605, 616; cf. *Matter of McGrath v Gold,* 36 NY2d 406, 410-411). This principle, so necessary to conserve judicial resources by discouraging redundant litigation, is grounded on the premise that once a person has been afforded a full and fair opportunity to litigate a particular issue, that person may not be permitted to do so again * * * Collateral estoppel is a corollary to the doctrine of *res judicata;* it permits in certain situations the determination of an issue of fact or law raised in a subsequent action by reference to a previous judgment on a different cause of action in which the same issue was necessarily raised and decided". Clearly, here, the "issue of ultimate fact" in respect to the claims of false arrest, malicious prosecution, slander and wrongful discharge (whether denominated "justification," "privilege" or "probable cause"), is Ryan's unauthorized possession of company property, an issue presented and resolved adversely to Ryan in the administrative law proceeding, where it was found that he was not entitled to unemployment benefits because he "removed company property from the company premises" and therefore, was "guilty of possessing company property without authorization". Like all " 'issues of ultimate fact' " once they have been " 'determined by a valid and final judgment, [they] cannot again be litigated between and the same parties in any future lawsuit.' (*Ashe v Swenson,* 397 US 436, 443.)" (*Bernstein v Birch Wathen School,* 71 AD2d 129, 133, affd 51 NY2d 932.) Ryan's option to proceed without counsel at the administrative level must be viewed as a conscious choice, freely made, and cannot now be used as a bootstrap argument to avoid the impact of the adverse ruling. Similarly, Ryan's plaint that he did not produce the "receipts" he had that showed he had purchased the equipment on Canal Street, "because no one asked for them" is unimpressive; particularly so when it appears that through counsel he had provided those receipts to the District Attorney in connection with the criminal proceeding. Moreover, the record demonstrates that although McQueeny was not a lawyer, the conflicting testimony at the hearing as to what had transpired on that fateful night, was tested by vigorous cross-examination by both sides with the administrative law judge rejecting Ryan's version. Finally, the affirmance of the administrative law judge's determination on appeal to the Unemployment Insurance Board, and in the article 78 proceeding (when Ryan was ably represented by counsel) conclusively demonstrates that the determination was supported by "substantial evidence" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 180). The collateral attack upon that determination should not be countenanced by this court, no matter how sympathetic a plight the plaintiff now presents.