KEVIN FRAZIER, an Infant, by JEANETTE WESTON, His Mother and Natural Guardian, et al., Appellants, v STATE OF NEW YORK, Defendant-Respondent.

First Department, March 29, 1984

### APPEARANCES OF COUNSEL

*Anthony Balsamo* of counsel (*Judge, Livoti & Bernstein,* attorneys), for appellants.

*Lew A. Millenbach* of counsel (*Peter J. Dooley* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for respondent.

### OPINION OF THE COURT

BLOOM, J.

On October 10, 1979, at approximately 1:45 A.M. the claimant was walking on the grounds of a housing project known as Wagner Houses. Wagner Houses is located between Second and Pleasant Avenues and runs from 120th Street to 124th Street, in the Borough of Manhattan. Adjacent to or part of Wagner Houses is a housing project known as the Paladino Project.

As claimant approached the Paladino Project he saw two men, one known to him as Berraro, emerge from a building described in the record as 445 East 120th Street. The two men, who were proceeding in the same direction as the claimant, walked toward the Pleasant Avenue exit of the project.

Immediately prior to this, Robert Warner, a New York State correction officer, had been robbed by two armed men. Warner, who was assigned to Green Haven Correctional Facility, located in Stormville, New York, was himself armed. Claimant heard him cry out either "Correctional Officer, hold it" or "Police Officer, hold it." By this time Berraro and his companion were running and had passed claimant who was now between Warner and the two men. Warner fired his weapon at the two fleeing men. Claimant, who was in the line of fire, was struck in the foot by a bullet.

After filing the requisite notice of intent to sue (Court of Claims Act, § 10, subd 3), claimant instituted this proceeding against the State contending that under the doctrine of *respondeat superior* the State was responsible for the negligence of its employee. After a trial on the issue of liability, the trial court dismissed the claim and the claimant appeals.

It is learning much too settled to require extensive citation of authority that an employer is liable for the misconduct of his employee when such misconduct is committed while the employee is acting within the scope of his employment (*Sauter v New York Tribune,* 305 NY 442). "An employee acts in the scope of his employment when he is doing something in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities" (*Lundberg v State of New York,* 25 NY2d 467, 470, mot for rearg den 26 NY2d 883; see, also, *Moritz v Pines Hotel,* 52 AD2d 1020; *Tortora v LaVoy,* 54 AD2d 1036).

While, more recently, the rule has been relaxed somewhat (*Riviello v Waldron,* 47 NY2d 297), it still requires that the act be done " ' "while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions" ' " (*Riviello v Waldron,* 47 NY2d 297, 302, *supra*).

Warner, in the endeavor to reduce the two men who had robbed him to his custody, did not meet either prong of the test by which "scope of employment" is measured. His pursuit of the two men who robbed him was not in further-

ance of the duties owed to the State as a correction officer. Similarly, in pursuing the robbers, he was not in a position where the State could exercise control over him, directly or indirectly. Hence, the State cannot be held liable for Warner's negligence.

Claimant urges, as do our dissenting brethren, two bases for reversal of the holding of the trial court. First, they assert that Warner was a "peace officer". From that premise they jump to the conclusion that he owed to his employer, the State, the duty of apprehending criminals.

It is to be noted that, effective September 1, 1980 "a comprehensive bill functionally repealed CPL 1.20, subdivision 33; enacted a new article 2 of the CPL which exclusively defines and lists peace officers, prescribes their power and mandates training programs" (Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 2.10, p 49). While the law as it stood prior to the 1980 amendment is here applicable, the 1980 amendment, insofar as it reaffirms the fundamental concepts which preexisted it, is helpful in the solution of the problem before us.

Under both the old law and the new law Warner was a "peace officer" (CPL 1.20, subd 33, par [h] [law in effect at the time of the incident]; CPL 2.10, subd 25 [current law]). "Peace officers" are distinguished from "police officers" (CPL 1.20, subd 34). While CPL 2.20 of the current law expands, in minor degree, the powers of peace officers, the section in large part, does no more than reaffirm the powers existing prior thereto as indicated in other statutes. In that regard we conceive the concluding paragraph of CPL 2.20 which reads: "For the purposes of this section a peace officer acts pursuant to his special duties when he performs the duties of his office, pursuant to the specialized nature of his particular employment, whereby he is required or authorized to enforce any general, special or local law or charter, rule, regulation, judgment or order" to be no more than a restatement of the law as it previously existed, i.e., that a peace officer does not subject the State to liability when, pursuing criminals and acting outside the scope of his specialized employment he negligently

wounds a bystander (cf. *Stavitz v City of New York,* 98 AD2d 529). That some correction officers may apprehend criminals, as indeed do some citizens not vested with the limited authority of peace officers, is much to their credit. However, in so doing they do not subject the State to liability for acts negligently performed.

The second ground urged upon us for reversal is that had Warner been injured in his pursuit of the two robbers he would have been entitled to workers' compensation benefits (*Matter of Quinlan v City of New York,* 33 AD2d 714). However, as *Lundberg v State of New York* (25 NY2d 467, *supra*) makes crystal clear, the standards applied in determining whether an injury is job related for the purpose of determining the right of a worker to an award of workers' compensation benefits are qualitatively different from those used to invoke the doctrine of *respondeat superior.* "[Workers'] Compensation was created to prevent injured workmen from becoming 'objects of charity' and to make reasonable compensation for injuries and death caused by job related activities regardless of fault * * * It is necessary for an employee seeking to obtain compensation benefits to establish only that his injury was caused by an activity related to his job" (*supra,* p 472). On the other hand, to establish employer liability because of employee misconduct under the doctrine of *respondeat superior,* control by the employer at the time of the misconduct is essential (*Lundberg v State of New York,* 25 NY2d 467, 472, *supra*).

In *Lundberg* (*supra*), one Sandilands was employed by the State Department of Public Works. He was assigned to a reservoir project distant some 80 miles from his home. It was his practice to live in the vicinity of the project from Monday through Friday of each week. On Friday, after the completion of his workday, he drove to his home, returning to work Monday morning. While he lived at the reservoir project the Department of Public Works reimbursed him for his expenses. Additionally, it paid him a mileage fee for the use of his car in traveling from the reservoir to his home as well as for the return trip.

On the Monday morning in question while driving from his home to the project, he attempted to pass a truck. In so doing, he skidded into the Lundberg vehicle causing injuries to Lundberg which resulted in his death.

Sandilands, who was also injured in the accident, applied for and received workers' compensation benefits. Nevertheless, and despite the rule that a final administrative determination by a quasi-judicial agency may, in a proper case, constitute a final and binding adjudication of the issues litigated therein (*Matter of Evans v Monaghan,* 306 NY 312; *Bernstein v Birch Wathen School,* 71 AD2d 129, affd 51 NY2d 932), the suit by Lundberg's widow against the State was dismissed. While accepting the finding that Sandilands was negligent (*Lundberg v State of New York,* 25 NY2d, at p 470), the Court of Appeals held that Sandilands was not acting within the scope of his employment while driving back from his home to his place of employment. We are of the opinion that the same rule is here applicable and that Warner was not acting within the scope of his employment as a correction officer in pursuing, and firing his gun at, the two men who had robbed him.

Authority most persuasive is to be found in our recent decision in *Stavitz v City of New York* (98 AD2d 529, *supra*). There we noted that when a New York City police officer acts for purely personal reasons the city does not become liable for his tortious acts even when the officer seeks to cloak his acts with official sanction. *Stavitz* involved two adjoining landowners, one of whom, Fabbri, was a police officer. The other was the plaintiff. Ill will existed between the two. Stavitz was reconstructing his yard. The immediate controversy centered on sand deposited by a contractor on a common driveway. Fabbri entered the home of Stavitz and assaulted him, his mother and his son. Shortly thereafter Fabbri returned, exhibited his police shield and arrested Stavitz and his son charging them with assault and resisting arrest. After a nonjury trial, both Stavitz and his son were acquitted. Thereafter, they brought action against the city for assault, malicious prosecution and false arrest. A verdict in favor of the Stavitzes was reversed by us on the ground that the actions of Fabbri were prompted by purely personal reasons and not in furtherance of any duty owed to the city.

On the facts here presented, we conclude that liability cannot be foisted upon the State for negligent acts committed by Warner for reasons personal to him and not in response to any duty owed by him to the State.

Accordingly, the judgment of the Court of Claims of the State of New York (EDWARD J. AMANN, JR., J.), entered August 16, 1982 which dismissed claimant's claim after a trial on the issue of liability only, should be affirmed without costs.

ALEXANDER, J. (dissenting). I respectfully dissent and would reverse the judgment dismissing the complaint.

The facts are not in dispute. On October 10, 1979, Robert Warner, a correction officer employed by the State of New York, was set upon and robbed in the elevator of an apartment building by two individuals who were armed with weapons. When the perpetrators alighted from the elevator, Warner gave chase, apparently in order to effect an arrest. He identified himself as a police officer saying "Hold it, Police" and when the perpetrators didn't stop, he fired at them with his personal off-duty Colt Detective Special. The claimant, Kevin Frazier, who was walking along the walkway some 10 feet behind the perpetrators and in front of Warner, was struck in the left foot. Warner succeeded in apprehending one of the perpetrators. As required by the Rules of the State Department of Correction, he filed an "Incident Report", setting forth the circumstances under which his weapon had been discharged.

Claim was made against the State and the matter was ultimately tried before the Court of Claims on the issue of liability only. Following the examination of the claimant Frazier, a recess was taken and the court conferred with counsel in chambers.

The record reveals that immediately following that conference, the court rendered its decision dismissing the complaint. The parties apparently agreed to certify one question for the court to consider: "Whether or not a correction officer who is off duty, who apprehends an individual who had committed a robbery and who had injured a third person, whether or not under those facts, the State of New York is liable. On the theory that, since the correction officer is a peace officer, that the State would be responsible for the negligence of a peace officer, if he is indeed found to be negligible [*sic*] while apprehending someone." The court dismissed the complaint, holding that "even though correction officers are peace officers and are

permitted to carry weapons and to effectuate arrests without warrants, the State of New York is not liable in damages for the actions of such an officer who is off-duty and is effectuating an arrest while off duty discharging a firearm."

The court below apparently found as a matter of law, and by affirming that dismissal the majority here holds, that Warner was not "acting within the scope of his employment" and thus that no liability can be attributed to the State under the doctrine of *respondeat superior.*

The respondent argues in its brief that Warner was a "correction officer" employed at Green Haven Correctional Institution, whose duties encompass supervision and control over inmates assigned to Green Haven and that "the duties of correction officers do not extend outside the confines of the correctional facility to which the correction officer is assigned nor beyond the hours of the officers shift." Respondent acknowledges however, that Warner was a "peace officer" at the time of the occurrence, but argues that the "State [should not] be held liable in this case based solely on the ground that Warner was a 'peace officer'."

In addressing the "scope of employment" issue under a fact pattern remarkably similar to the case at bar, the Appellate Division, Third Department, held that a correction officer employed by the Correction Department of the City of New York, who, while off duty, was injured in attempting to pursue two thieves he observed robbing a cash register, was entitled to recover workers' compensation benefits. The court rejected the City of New York's assertion that the officer's disability was not caused by an accident "arising out of and in the course of his employment" holding that "[a]s a peace officer, respondent had the authority to make an arrest without a warrant for a crime committed in his presence * * * While general prevention of crime is not a usual duty of a correction officer, nevertheless, as a 'peace officer', he is not an ordinary citizen and assumes the duty to prevent crime and apprehend criminals. Having such authority, it was his duty to attempt to make an arrest (*Schultz* v. *Greenwood Cemetery,* 190 N.Y. 276) and appellant [City of New York] must, therefore,

assume liability for injury sustained as a result of respondent's attempts to carry out that duty". (*Matter of Quinlan v City of New York,* 33 AD2d 714; see, also, *Matter of Iazzetta [State of New York]*, NYLJ, March 31, 1980, p 11, col 4, where late claim was allowed against the State for damages resulting from a shooting of claimant by his father-in-law who also was a clerk of the Civil Court and as a "peace officer" may have been affecting an arrest for violation of an order of protection issued by the Family Court.)

While *Quinlan (supra)* involved the question of whether or not the "peace officer" was entitled to workers' compensation benefits for his injuries, the rule of law enunciated by the court there is equally applicable here. Surely, if the City of New York must assume liability for injuries to a correction officer, sustained as a result of his attempts to carry out his duty as a "peace officer" to "prevent crime and apprehend criminals", an innocent bystander injured as the result of a correction officer's attempt as a "peace officer" to carry out such duty is entitled to no less from the State of New York.

Nor does the decision by the Court of Appeals in *Lundberg v State of New York* (25 NY2d 467) require a different conclusion. In *Lundberg,* plaintiff's intestate was killed as the result of a head-on auto collision with a State employee, Sandilands, who was driving back to his place of employment at the Allegheny Reservoir Project near Salamanca, after a weekend holiday at his home in Buffalo. He normally would stay at the reservoir during the week and would go home to his family on weekends. The State reimbursed him for his living expenses at Salamanca and paid the mileage expenses for his trips back and forth.

Sandilands applied for and was awarded workers' compensation benefits for the injuries he sustained in the accident. Lundberg's widow brought suit for Lundberg's pain and suffering and his wrongful death. Citing the general rule that an employee driving to and from work is not acting in the scope of his employment, the Court of Appeals ordered the claim of Lundberg's widow dismissed. In so doing, the court emphasized the lack of control by the employer over the employee in such a situation. It found

that Sandilands was not driving his car in furtherance of his work at the time of the accident, but was "engaged in an independent personal activity over which the State had no control." (*Lundberg v State of New York,* 25 NY2d, at p 471.) The majority of the court rejected the finding that Sandilands was acting within the "scope of employment" and thus was entitled to workers' compensation benefits as establishing that the State was liable for Lundberg's injuries and death under the doctrine of *respondeat superior.* The court stated that "[i]t is necessary for an employee seeking to obtain compensation benefits to establish only that his injury was caused by an activity related to his job, whereas the doctrine of *respondeat superior* has clearly not received such wide application because of the *requirement that the employee be under the control of the employer at the time of the injury.*" (*Lundberg v State of New York, supra,* p 472; emphasis added.) Thus the degree to which the employee is subject to the control of the employer in respect to the particular act or activity that produces the injury is a critical factor in determining whether vicarious liability attaches to the employer under the doctrine of *respondeat superior.*

Here, the State clearly exercises control over its correction officers in respect to the ownership and use of weapons, both those issued to them while on duty within the correctional facility, and the personal weapons they are permitted to carry while off duty. The officers are required to qualify at least once a year in the use of those weapons. They are required to register their personal weapons with the department and to report any incidents that may occur during their off-duty hours that involve the use of their weapons. The department further may prohibit their carrying weapons when off duty and doubtless has promulgated rules and regulations governing the type and caliber of the weapons that may be carried and the ammunition that may be used. All of this is consistent with the status of correction officers as "peace officers" and their statutory authority to make arrests for felonies committed in their presence.* That being so, it seems clear, beyond contradic-

---

* The facts in *Stavitz v City of New York* (98 AD2d 529) are so completely inapposite to the issue here presented as to make citation thereto totally unwarranted. As is clear from the majority's brief statement of the facts, no crime had been or was being committed by Stavitz, thus his arrest by Officer Fabbri, was without any cause other

tion that the State of New York exercised control over Warner in respect to the possession and use of his weapon.

The fact that Warner was "off duty" and was not then performing duties of supervision and control over inmates assigned to Green Haven Correctional Institution, does not compel the conclusion as a matter of law, that he was not, at the time of the incident "acting within the scope of his employment".

While under the rule of *respondeat superior,* the masters' vicarious liability for the act of the servant derives from the fact that the servant is acting within the "scope of his employment", our Court of Appeals has recognized that the definition of "scope of employment", has not been an unchanging one and that "for an employee to be regarded as acting within the scope of his employment, the employer need not have forseen the precise act or the exact manner of the injury as long as the general type of conduct may have been reasonably expected * * * it suffices that the tortious conduct be a natural incident of the employment" (*Riviello v Waldron,* 47 NY2d 297, 304).

Indeed, it has been said that "[f]orseeability is the State's current criterion for measuring an employer's liability for conduct of employees whose behavior is alleged to have taken them beyond the scope of their employment. In a *respondeat superior* context, foreseeability differs significantly from the ' "forseeably unreasonable risk of harm that spells negligence" ' (*Bushey & Sons v United States,* 398 F2d 167, 171). It is foresight which must impel the prudent man to ' "perceive the harm likely to flow from his long-run activity in spite of all reasonable precautions on his own part." ' The test thus is more similar to that utilized in workers' compensation litigation than in circumstances where direct negligence is the question" (*O'Boyle v Avis Rent-A-Car System,* 78 AD2d 431, 440-441; see, also, *Bushey & Sons v United States,* 398 F2d 167; *Makoske v Lombardy,* 47 AD2d 284, affd 39 NY2d 773).

Thus, for Warner "to be regarded as acting within the scope of his employment, [the State] need not have foreseen the precise act or the exact manner of the injury". (*Riviello v Waldron,* 47 NY2d 297, 304, *supra.*) Certainly this type of

than personal hostility.

conduct, the negligent use of his firearm in his capacity as a "peace officer", which capacity derives from his employment as a correction officer and pursuant to which, he was subject to the State's control "may have been reasonably expected" (*supra,* p 304) and thus "within the scope of his employment".

It was error therefore for the court to dismiss the complaint as a matter of law. The complaint should be reinstated and a new trial ordered.

Ross, J. P., and Silverman, J., concur with Bloom, J.; Asch and Alexander, JJ., dissent in an opinion by Alexander, J.

Judgment, Court of Claims of State of New York, entered on August 16, 1982, affirmed, without costs and without disbursements.