In re Martin COHEN, Debtor.

Frank PERINO, Plaintiff,

v.

Martin COHEN, Defendant.

Bankruptcy No. 87–30122.
Adv. No. 87–7018.

United States Bankruptcy Court,
S.D. New York.

Sept. 30, 1988.

Mid–Hudson Legal Services, Inc., Poughkeepsie, N.Y., for plaintiff; Howard Schell Reilly, and Michael J. Sinsky, of counsel.

Chester G. Krom, Kingston, N.Y., for defendant.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

JEREMIAH E. BERK, Bankruptcy Judge.

### I. INTRODUCTION

This is an adversary proceeding pursuant to Section 523(a)(6) of the Bankruptcy Code ("Code"), 11 U.S.C. § 523(a)(6), by Frank Perino, plaintiff, against Martin Cohen, the debtor-defendant. By motion for summary judgment, Perino here seeks a determination that his claim against the debtor in the sum of $5,000.00, representing compensatory damages pursuant to a default judgment by a state administrative agency, is nondischargeable under the doctrine of collateral estoppel.

Simply put, we hold that the proceedings before the administrative tribunal, the New York State Division of Human Rights, lacked the requisite attributes to permit this court to invoke the doctrine of issue preclusion on the question of debt dischargeability. The determination of whether or not Perino's "injury" was the result of Cohen's "willful and malicious" conduct was neither presented to, nor decided by, the Division of Human Rights. Indeed, even if all of the allegations of Perino's discrimination complaint were deemed true by virtue of Cohen's failure to respond, there would still be insufficient reason to here conclude that Perino's "injury" was caused by Cohen's "willful and malicious" conduct.

### II. FACTS

The events leading to the claim Perino here seeks to establish as nondischargeable occurred nearly six years ago. The parties dispute most of the facts pertaining to these events. However, they agree that at all times relevant hereto: (1) the plaintiff was legally blind; (2) that he was accompanied by a trained guide dog; and (3) that Cohen was the owner of the Cafe Expresso, a public accommodation in Woodstock, New York.

By verified complaint dated January 12, 1983, Perino filed an action with the New York State Division of Human Rights charging the debtor with unlawful discrimination in violation of Article 15 of the Executive Law. Perino claimed that Cohen unlawfully discriminated against himself and his dog because of his disability. The complaint's sole factual allegation consisted of the statement that "Marty Cohen owner of Cafe Expresso refused to serve us declaring that Frank [Perino] is not blind and that his dog is not a legal seeing eye dog."

After investigation, the Human Rights Division determined that "it had jurisdiction over the complaint and that probable cause existed to believe that [Cohen] had engaged in an unlawful discriminatory practice." The events which transpired after this determination are unclear. Apparently, during the summer of 1983, some attempt to settle the complaint was undertaken by the debtor who at this juncture was represented by counsel. A settlement, however, was never reached. The debtor, by affidavit filed February 23, 1988, states that although the settlement offer was ultimately "refused" by Perino, the debtor was "unaware" that Perino had rejected the settlement.

Nearly three years later, on December 6, 1986 the debtor received a notice to appear for a hearing to be held in New York City on December 15, 1986 before the Division of Human Rights. The purpose of this hearing was to determine whether Cohen unlawfully discriminated against Perino by denying him the "accommodations, advantages, facilities and privileges" of the cafe because of Perino's disability and use of a guide dog. The nearly three-year hiatus between the settlement negotiations and the hearing date is unexplained.

Cohen sought an adjournment of the hearing. He claimed that the notification of the hearing caught him by surprise as he thought the matter was settled, and asked for additional time to collect his records and retain counsel. This was his first request for an adjournment. He stated, "Since I had very little time to put a

defense together and I was now unrepresented, I requested in writing an adjournment.... I had never asked for any adjournment of this proceedings [sic] previously." In addition to claiming that he needed the adjournment to prepare for the hearing and obtain counsel, the debtor testified that he was unable to attend due to a physical disability caused by a degenerative joint disease.

Cohen's request for adjournment was denied and he was so notified by a mailgram received on the Friday before the Monday hearing. On the day of the hearing, Cohen states that he again sought an adjournment by telephone, but was unsuccessful.

The hearing before the state administrative tribunal went forward as scheduled, without Cohen. Perino testified before an administrative law judge who, by opinion and order entered February 24, 1987, made the following findings:

3. On or about December 12, 1982, at approximately 1 p.m., Complainant, accompanied by his wife Cathy and his guide dog Mountain entered the Cafe Expresso and sat down at a table. A waitress Lisa told them that Respondent Martin Cohen had instructed her to inform Complainant that he could not be served because he had his guide dog present.

4. When Complainant protested that under the law he was permitted to have his dog present, Respondent Cohen came over and told Complainant to "get that house pet out, you're not blind." When Complainant informed Respondent that the law permitted him to be accompanied by his guide dog, Respondent replied by stating that he made his own rules and asked Complainant to leave.

5. Complainant was very upset and "felt he was assaulted, ... raped ... taken advantage of." He decided to leave the premises, especially since his wife was equally upset.

6. On or about January 11, 1983, at approximately 2 p.m., Complainant returned to the Expresso Cafe [sic] again accompanied by his wife and his guide dog Mountain; Complainant demanded to be served.

7. When Respondent Cohen again refused to serve him, Complainant got angry and Respondent Cohen threatened to call the police.

8. When Complainant continued to demand service, cited the law and offered to show Respondent identification showing that Mountain was a trained guide dog, Respondent did call police from the Town of Woodstock.

9. The policeman who responded identified by Complainant as Richard, after speaking to Complainant and Respondent Cohen told Complainant that Cohen could make his rules as to serving patrons and asked Complainant to leave, which Complainant did.

10. Complainant was very upset by Respondent's failure to serve him. He was also very upset by Respondent's remarks about Complainant not being blind and his guide dog being a house pet.

11. Complainant's emotional stress was heightened by the fact that his wife was also upset and crying at the time of Respondent Cohen's actions.

12. I find that Respondent Martin Cohen unlawfully discriminated against Complainant by denying to him the facilities of the Cafe Expresso, a place of public accommodations [sic], because of Complainant's guide dog.

13. I find that Complainant suffered mental anguish and humiliation as a result of Respondent's discriminatory acts.

14. I find that the awarding of compensatory damages to the Complainant will further the purposes of the Human Rights Law.

Cohen disputes these findings. Among his principal assertions are that: (1) there was only one incident with Perino, which occurred on December 13, 1982; (2) Cohen and his staff simply asked Perino to move his dog under the table as it was blocking the aisle; Perino over-reacted to this request, became loud, profane and threatened Cohen with a lawsuit; (3) subsequent to this episode Perino and his dog visited the

cafe on other occasions, all without incident.

Apparently none of these assertions were before the administrative tribunal. The administrative law judge concluded that Cohen violated Sections 296(2)(a) and 296(14) of the Human Rights Law, N.Y. Exec. Law §§ 296(2)(a) and 296(14) (McKinney 1988). These provisions state in pertinent part:

(2).(a). It shall be an unlawful discriminatory practice for any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the ... disability ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof....

(14). It shall be an unlawful discriminatory practice for any person engaged in any activity covered by this section to discriminate against a blind person ... on the basis of his use of a guide dog....

Cohen was ordered to pay Perino the sum of $5,000.00 as "compensatory damages." A "Notice of Order After Hearing" was issued which informed him of his right to appeal. Cohen neither paid the compensatory damages nor filed an appeal. On March 17, 1987, he filed for relief under Chapter 7 and his bankruptcy discharge was entered on November 16, 1987.

### III. DISCUSSION

#### A. Summary Judgment

Federal Rule of Civil Procedure 56(c) ("FRCP") provides that summary judgment should be granted if the pleadings, affidavits and other papers submitted in support of the motion show that there is no genuine triable issue of material fact and that the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Corselli v. Coughlin*, 842 F.2d 23 (2d Cir.1988); *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54 (2d Cir.1987); *Burtnieks v. City of New York*, 716 F.2d 982 (2d Cir.1983). The "mere existence of *some* alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (original emphasis). The court must therefore determine whether a *material* issue of fact exists, *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988) (a "potential issue of fact" will not defeat a motion for summary judgment), and not resolve disputed issues of fact. *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Eastman Machine Co. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). On a motion for summary judgment a court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d at 58 (quoting *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)). To this end, the entire record must be read in the light most favorable to the party against whom summary judgment is sought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

The burden of establishing that there are no relevant facts in dispute falls upon the proponent of the motion. *Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. at 2553; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d at 57; *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir.1984); *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d at 1319–20; *In re Tilbury*, 74 B.R. 73, 76 (Bankr. 9th Cir.1987); *In re Goux*, 72 B.R. 355, 357 (Bankr.N.D.N.Y.1987).

Where the moving party has sustained this burden, FRCP 56(c), then FRCP 56(e)

requires the opposing party to identify specific facts showing a genuine issue exists for trial. *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2553; *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Wyler v. United States,* 725 F.2d 156, 160 (2d Cir. 1983); *Contemporary Mission, Inc. v. U.S. Postal Service,* 648 F.2d 97, 107 (2d Cir. 1981); *In re Goux,* 72 B.R. at 357. To defeat a summary judgment motion, the respondent "must do more than whet the curiosity of the court; he must support vague accusation and surmise with concrete particulars." *Applegate v. Top Associates, Inc.,* 425 F.2d 92, 96 (2d Cir.1970). The opposing party "must do more than indicate some 'metaphysical doubt as to the material facts.'" *In re Dubian,* 77 B.R. 332, 340 (Bankr.D.Mass.1987) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. at 586, 106 S.Ct. at 1356). The disputed factual issues must be material, not peripheral, to the outcome of the litigation. Thus, where the only issues raised are "frivolous or immaterial ones which would simply serve to provide an exercise in futility or a purposeless trial for the ... court," summary judgment should be granted. *United States v. Matheson,* 532 F.2d 809, 813 (2d Cir.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed. 2d 85 (1976).

In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d at 57; *Knight v. U.S. Fire Insurance Co.,* 804 F.2d at 11; *Schwabenbauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1981). The court

must go beyond the mere pleadings and consider the evidence presented and all inferences reasonably deducible from such evidence. *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 554–55 (2d Cir.1977); *United States v. Matheson,* 532 F.2d at 813; *In re Goux,* 72 B.R. at 357; *Matter of Esposito,* 44 B.R. 817, 821 (Bankr.S.D.N.Y. 1984). All inferences to be drawn must be construed in a context most favorable to the party opposing the motion for summary judgment. *Board of Education v. Pico,* 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982); *United States v. Diebold Inc.,* 369 U.S. at 655, 82 S.Ct. at 994; *Knight v. U.S. Fire Insurance Co.,* 804 F.2d at 11; *In re Dubian,* 77 B.R. at 340; *In re Goux,* 72 B.R. at 357.

The plaintiff here argues in support of his motion that no issues of fact exist, as consideration of any factual issue is precluded by the prior determination of the New York Human Rights Division under the doctrine of collateral estoppel. By virtue of this prior determination, Perino claims that there remains for decision only an issue of law which then is subject to summary judgment. He contends that as a matter of law the finding of unlawful discrimination by the administrative tribunal mandates a finding by this court that his claim for compensatory damages is nondischargeable as a debt arising from a willful and malicious injury within the meaning of Code Section 523(a)(6).

## B. Collateral Estoppel

### 1. In general

Collateral estoppel, as does the related doctrine of *res judicata,*[1] serves the "dual purpose of protecting litigants from the burden of relitigating an identical issue ... and of promoting judicial economy by pre-

---

1. The Supreme Court explained the difference between collateral estoppel (or issue preclusion) and res judicata (or claim preclusion) as the following:

   Thus, under the doctrine of res judicata, a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit on the same cause of action. Under the doctrine of collateral estoppel, on

the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.

*Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955).

venting needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971).

Application of this doctrine "is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210. Collateral estoppel thereby relieves "parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). As one writer noted, "Collateral estoppel is used to encourage the parties to present their best arguments on the issues in question in the first instance and thereby increase judicial efficiency." B. Russell, *Bankruptcy Evidence Manual* § 4 at 5 (1987).

Under the doctrine of collateral estoppel, once an issue is determined by a court of competent jurisdiction, that determination is conclusive in subsequent litigation based on a different cause of action involving a party to the prior suit. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466–67 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982). Collateral estoppel treats as final "only those issues actually and necessarily decided in a prior suit." *In re Kaufman*, 85 B.R. 706, 709 (Bankr.S.D. N.Y.1988).

### 2. Collateral Estoppel as Applied to Bankruptcy Litigation

#### a. In general

As the application of collateral estoppel "obviously serves important interests," it follows that these "interests do not disappear simply because the subsequent proceedings are in bankruptcy." *Combs v. Richardson*, 838 F.2d 112, 115 (4th Cir. 1988). "There is no reason," as one court observed, "to prefer the fact-finding of a bankruptcy judge to that of a jury so long

as the same issue was presented in each proceeding." *Id.*

Recognizing that "[b]ankruptcy often breeds litigation," *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed. 2d 767 (1979), the Supreme Court intimated that the doctrine of collateral estoppel may pertain to bankruptcy litigation. The Court reasoned that if a state court determined factual issues using standards identical to those employed under bankruptcy law, then "collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court." *Id.* at 139 n. 10, 99 S.Ct. at 2213 n. 10.

In general, collateral estoppel precludes relitigation before a bankruptcy court of factual issues that were previously determined by another court. *Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); *In re Gottheiner*, 703 F.2d 1136 (9th Cir.1983). The "theory," as one writer explained:

> is that there is no reason to presume that the parties will not vigorously present their case on issues necessary to the state court proceedings or that the bankruptcy court will be any more fair or accurate than the state court in the determination of the facts. Thus, there is no reason to allow relitigation of facts previously litigated which were necessary to the outcome of that prior litigation.

B. Russell, *Bankruptcy Evidence Manual* § 4 at 5.

The Second Circuit, recognizing that Congress pursuant to 28 U.S.C. § 1738 requires all federal courts to give preclusive effect to state court judgments whenever the courts of the state from which the judgments emanated would do so, concluded that "[b]ankruptcy courts fall within Congress' mandate." *Kelleran v. Andrijevic*, 825 F.2d at 694. It held that the bankruptcy court, notwithstanding its equitable powers, was bound to give preclusive effect to the liability determinations rendered in connection with a default judgment obtained in a state court.

Although the Supreme Court in *Brown v. Felsen* "expressly left open the question whether or not collateral estoppel would apply" to dischargeability determinations of the bankruptcy court, *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981), most of the circuits that have considered the issue agree that collateral estoppel pertains to these determinations. *In re Wallace*, 840 F.2d 762 (10th Cir.1988); *Klingman v. Levinson*, 831 F.2d 1292 (7th Cir.1987); *In re Halpern*, 810 F.2d 1061 (11th Cir.1987); *Spilman v. Harley*, 656 F.2d 224 (6th Cir. 1981); *Matter of Ross*, 602 F.2d 604 (3d Cir.1979); *Matter of Merrill*, 594 F.2d 1064 (5th Cir.1979). The one exception appears to be *In re Houtman*, 568 F.2d 651, 653 (9th Cir.1978) ("there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts"). In the Second Circuit, the bankruptcy courts have "uniformly applied" the doctrine of collateral estoppel to dischargeability proceedings. *Matter of Esposito*, 44 B.R. at 823; *e.g., Matter of Herman*, 6 B.R. 352, 359–60 (S.D.N.Y.1980); *In re Stone*, 90 B.R. 71 (Bankr.S.D.N.Y.1988); *In re Graziano*, 35 B.R. 589, 594 (Bankr.E.D.N.Y.1983); *In re Spector*, 22 B.R. 226, 231 (Bankr.N.D.N.Y. 1982); *In re Sloan*, 18 B.R. 1021, 1023 (Bankr.E.D.N.Y.1982); *In re Supple*, 14 B.R. 898, 903 (Bankr.D.Conn.1981); *In re Iannelli*, 12 B.R. 561, 563 (Bankr.D.Conn. 1981); *Matter of Allen*, 3 B.R. 355, 357–58 (Bankr.W.D.N.Y.1980).

### b. Dischargeability

Although the bankruptcy court must ultimately decide whether or not a debt is dischargeable, collateral estoppel "may be invoked to bar relitigation of the factual issues underlying the determination of dischargeability." *In re Wallace*, 840 F.2d at 764; *Spilman v. Harley*, 656 F.2d at 227 ("that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts"); *In re Halpern*, 810 F.2d at 1063–64.

Just as a normal civil proceeding consists of the two elements, liability and damages, so an adversary proceeding respecting dischargeability consists of three elements, liability, damages and dischargeability. A non-bankruptcy court may consider the issues of liability and damages, but it may not rule on the question of dischargeability. In a personal injury case the non-bankruptcy court may determine liability, damages and willfulness, but it can not establish dischargeability or non-dischargeability. The Bankruptcy Court, however, may adopt the findings of the non-bankruptcy court where they have been litigated fully. Thus a Bankruptcy Court might apply offensive collateral estoppel on the issue of liability, or on the issues of liability and damages, or on the issues of liability, damages and willfulness, depending on the extent to which those issues were litigated in the prior action, but the Bankruptcy Court still would have to determine on the basis of those proven facts whether or not those acts come within § 523(a)(2), (4) or (6).

*In re Magnafici*, 16 B.R. 246, 252–53 (Bankr.N.D.Ill.1981).

### 3. Application

#### a. In general

Under 28 U.S.C. § 1738 federal courts must accord prior state court proceedings the same preclusive effect that the state courts themselves would afford those proceedings. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 381, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985); *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. at 466, 102 S.Ct. at 1889; *Allen v. McCurry*, 449 U.S. at 96, 101 S.Ct. at 415; *Kelleran v. Andrijevic*, 825 F.2d at 694; *Gorin v. Osborne*, 756 F.2d 834, 836–37 (11th Cir.1985); *Gargiul v. Tompkins*, 739 F.2d 34, 36 (2d Cir.1984); *Winters v. Lavine*, 574 F.2d 46, 54 (2d Cir.1978). Section 1738, in pertinent part, mandates that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law

or usage in the courts of such State ... from which they are taken."

Bankruptcy courts are within the "mandate" of Section 1738. *Kelleran v. Andrijevic,* 825 F.2d at 694; *In re Shoreline Concrete Co.,* 831 F.2d 903, 905 (9th Cir. 1987); *Bowers v. Connecticut National Bank,* 78 B.R. 388, 390 (D.Conn.1987); *Matter of Brownlee,* 83 B.R. 836, 838–39 (Bankr.N.D.Ga.1988); *In re Ziets,* 79 B.R. 222, 225 (Bankr.E.D.Pa.1987); *In re All American of Ashburn, Inc.,* 56 B.R. 186, 188 (Bankr.N.D.Ga.), *aff'd,* 805 F.2d 1515 (11th Cir.1986); *Matter of Farrell,* 27 B.R. 241, 243 (Bankr.E.D.N.Y.1982) ("It is clear that the bankruptcy court by virtue of 28 U.S.C. Section 1738 is to give full faith and credit to a prior final state court judgment in the same manner as would the court in that state...."). As one court explained:

> It is true that bankruptcy courts sit as courts of equity. However, a fundamental principle of equity jurisprudence is that "equity follows the law." Courts of equity are bound to follow express statutory commands to the same extent as are courts of law. Bankruptcy courts are no more entitled to ignore the law than are other courts of equity.

*In re Shoreline Concrete Co.,* 831 F.2d at 905 (citations omitted).

Section 1738 requires a two-part analysis. The federal court must "look first to state preclusion law in determining the preclusive effects of a state court judgment." *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. at 381–82, 105 S.Ct. at 1332–33 ("a federal court may rely in the first instance on state preclusion principles to determine the extent to which an earlier state judgment bars subsequent litigation"); *Migra v. Warren City School District Board of Education,* 465 U.S. at 81, 104 S.Ct. at 896; *Kremer v. Chemical Construction Corp.,* 456 U.S. at 481–82, 102 S.Ct. at 1897–98 (Section 1783 "goes beyond the common law and commands a

federal court to accept the rules chosen by the State from which the judgment is taken"); *Zanghi v. Incorporated Village of Old Brookville,* 752 F.2d 42, 46 (2d Cir. 1985); *Winters v. Lavine,* 574 F.2d at 54 ("§ 1738 requires the federal court to apply, where appropriate, the state court's standards of collateral estoppel"); *Matter of Brownlee,* 83 B.R. at 838; *In re All American of Ashburn, Inc.,* 56 B.R. at 188. Once the preclusive effect of the prior state court judgment is determined, the federal court must then ascertain whether any federal statute either expressly or impliedly creates an exception to the full faith and credit mandate of Section 1738. An exception to Section 1738, the Supreme Court has held, "will not be recognized unless a later statute contains an express or implied partial repeal." *Id.* 456 U.S. at 468, 102 S.Ct. at 1890.[2]

### b. Administrative Determinations

Whereas Section 1738 "governs the preclusive effect to be given the *judgments and records of state courts," University of Tennessee v. Elliott,* 478 U.S. 788, 794, 106 S.Ct. 3220, 3224, 92 L.Ed.2d 635, 643 (1986) (emphasis added), its applicability to decisions and judgments of *administrative* bodies is limited. For example, the Supreme Court in *Kremer v. Chemical Construction Co.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) ruled that a *judicially reviewed* administrative determination by a state agency was entitled to be accorded collateral estoppel effect under Section 1738 in a subsequent federal action. As the Second Circuit recently noted, "When a plaintiff has sought state judicial review of an agency decision, *Kremer* requires that we look to the preclusive effect that New York would give to the judgment of its court." *Bray v. New York Life Insurance,* 851 F.2d 60, 63 (2d Cir.1988).

Here, however, plaintiff seeks to have an *unreviewed* administrative determination serve as issue preclusive of his discharge-

---

**2.** Although to some extent the "general rules of application of § 1738 seem to have been ignored by the federal courts in bankruptcy cases," *In re Byard* 47 B.R. 700, 703 (Bankr.M.D. Tenn.1985), this two-part analysis is gaining recognition. *E.g., Bowers v. Connecticut National*

*Bank,* 78 B.R. 388 (D.Conn.1987); *In re Wright,* 57 B.R. 961 (Bankr.N.D.Ga.1986); *In re All American of Ashburn, Inc.,* 56 B.R. 186 (Bankr. N.D.Ga.), *aff'd,* 805 F.2d 1515 (11th Cir.1986); *In re Byard,* 47 B.R. 700 (Bankr.M.D.Tenn.1985).

ability objection. Cohen never sought judicial review of the decision and judgment of the Human Rights Division.

In the absence of state court review, the Supreme Court has held that Section 1738 by its very terms is "not applicable to the unreviewed state administrative factfinding." *University of Tennessee v. Elliott,* 478 U.S. at 794, 106 S.Ct. at 3224, 92 L.Ed. 2d at 643. In *Elliott,* the Supreme Court had to decide whether factfinding by an administrative law judge was entitled to preclusive effect in a subsequent federal civil rights action. The court held that under federal common law principles collateral estoppel generally does apply to unreviewed administrative factfinding, except for claims brought under Title VII of the Civil Right Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

While the Supreme Court acknowledged that Section 1738 is the "governing statute" regarding the judgments and records of state courts and that this statute antedates the development of administrative agencies, it concluded nevertheless that Section 1738 "clearly does not represent a congressional determination that the decisions of state administrative agencies should *not* be given preclusive effect." 478 U.S. at 795, 106 S.Ct. at 3224, 92 L.Ed. 2d at 644 (emphasis added). The Court also recalled that it has "frequently fashioned federal common-law rules of preclusion in the absence of a governing statute." *Id.* at 794, 106 S.Ct. at 3224, 92 L.Ed.2d at 643.

Recognizing that it previously held that it is "sound policy to apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity," *id.* at 797, 106 S.Ct. at 3226, 92 L.Ed.2d at 645, the Court looked to its holding in *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) which gave preclusive effect to the factfinding of a federal administrative body in a subsequent action in the federal Court of Claims. In that decision, the Supreme Court explained:

[W]e note that the result we reach is harmonious with general principles of collateral estoppel. Occasionally courts have used language to the effect that res judicata principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.

*Id.* at 421–22, 86 S.Ct. at 1559–60.

Thus, the Court in *Elliott* reasoned:

... giving preclusive effect to administrative factfinding serves the value underlying general principles of collateral estoppel: enforcing repose. This value, which encompasses both the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources, is equally implicated whether factfinding is done by a federal or state agency.

Having federal courts give preclusive effect to the factfinding of state administrative tribunals also serves the value of federalism.... The full Faith and Credit Clause is of course not binding on federal courts, but we can certainly look to the policies underlying the Clause in fashioning federal common-law rules of preclusion. "Perhaps the major purpose of the Full Faith and Credit Clause is to act as a nationally unifying force," and this purpose is served by giving preclusive effect to state administrative factfinding rather than leaving the courts of a second forum, state or federal, free to reach conflicting results.

*University of Tennessee v. Elliott,* 478 U.S. at 798–99, 106 S.Ct. at 3226–27, 92 L.Ed.2d at 646 (citation omitted) (quoting *Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 289, 100 S.Ct. 2647, 2665, 65 L.Ed. 2d 757 (1980)).

The Court in *Elliott* held that when a state agency, acting in a judicial capacity, resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, "federal

courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Id.* 478 U.S. at 799, 106 S.Ct. at 3227, 92 L.Ed.2d at 647.

#### 4. New York Law of Collateral Estoppel

##### a. In general

In New York, collateral estoppel or issue preclusion "may be invoked in a subsequent action or proceeding to prevent a party from relitigating an issue decided against that party in a prior adjudication." *Staatsburg Water Co. v. Staatsburg Fire District,* 72 N.Y.2d 147, 531 N.Y.S.2d 876, 878, 527 N.E.2d 754, 756 (1988); *e.g., Halyalkar v. Board of Regents,* 72 N.Y.2d 261, 532 N.Y.S.2d 85, 527 N.E.2d 1222 (1988); *Allied Chemical v. Niagara Mohawk Power Corp.,* 72 N.Y.2d 271, 532 N.Y.S.2d 230, 528 N.E.2d 153 (1988). New York recognizes that collateral estoppel is premised on the "sound principle" that it is unfair to permit a party to relitigate an issue which was previously decided in a proceeding in which the party had a full and fair opportunity to litigate the issue. *Schwartz v. Public Administrator of County of Bronx,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 958, 246 N.E.2d 725, 727 (1969) ("where it can be fairly said that a party has had a full opportunity to litigate a particular issue, he cannot reasonably demand a second one"); *Gilberg v. Barbieri,* 53 N.Y.2d 285, 441 N.Y.S.2d 49, 50, 423 N.E.2d 807, 808 (1981). "Properly utilized," it has been observed, collateral estoppel "also serves to conserve the resources of courts and litigants." *Gilberg v. Barbieri,* 441 N.Y.S.2d at 50, 423 N.E.2d at 808.

The general applicability of collateral estoppel to quasi-judicial determinations of administrative agencies "has long been recognized in New York," *Newsday, Inc. v. Ross,* 80 A.D.2d 1, 437 N.Y.S.2d 376, 379 (1981), and is "settled law," *Bernstein v. Birch Wathen School,* 71 A.D.2d 129, 421 N.Y.S.2d 574, 575 (1979), *aff'd,* 51 N.Y.2d 932, 434 N.Y.S.2d 994, 415 N.E.2d 982 (1980); *Zanghi v. Incorporated Village of*

*Old Brookville,* 752 F.2d 42 (2d Cir.1985); *Matter of Guimarales,* 68 N.Y.2d 989, 510 N.Y.S.2d 558, 503 N.E.2d 113 (1986); *Clemens v. Apple,* 65 N.Y.2d 746, 492 N.Y.S.2d 20, 481 N.E.2d 560 (1985); *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984); *Capital Telephone Co. v. Pattersonville Telephone Co.,* 56 N.Y.2d 11, 451 N.Y.S.2d 11, 436 N.E.2d 461 (1982); *Board of Education v. New York State Human Rights Appeal Board,* 106 A.D.2d 364, 482 N.Y.S.2d 495 (1984); *Green v. Ingber,* 80 A.D.2d 928, 437 N.Y.S.2d 761 (1981); *Silberman v. Penn General Agencies of New York, Inc.,* 63 A.D.2d 929, 406 N.Y.S.2d 93 (1978). It is thus "well established" in New York "that the doctrine of collateral estoppel is applicable to determinations of quasi-judicial agencies and that such determinations, when final, become conclusive and binding on the courts, as well as on other quasi-judicial administrative agencies." *Willer v. New York State Board of Regents,* 101 A.D.2d 937, 475 N.Y.S.2d 656, 657 (1984), *appeal denied,* 69 N.Y.2d 610, 516 N.Y.S.2d 1025, 509 N.E.2d 360 (1987) (citations omitted); *Staatsburg Water Co. v. Staatsburg Fire District,* 531 N.Y.S.2d at 878, 527 N.E.2d at 756.

Nevertheless, recognizing that "historically and necessarily collateral estoppel is a flexible doctrine which can never be rigidly or mechanically applied," *Gilberg v. Barbieri,* 441 N.Y.S.2d at 51, 423 N.E.2d at 809, the New York courts have demanded that "certain conditions must be met" before collateral estoppel will apply to an administrative determination. *Board of Education v. New York State Human Rights Appeal Board,* 482 N.Y.S.2d at 496; *Newsday, Inc. v. Ross,* 437 N.Y.S.2d at 380 ("[o]n a case by case basis, collateral estoppel ... 'is elusive and difficult to apply ... but it is essentially a rule of justice and fairness'") (quoting *Commissioners of State Insurance Fund v. Low,* 3 N.Y.2d 590, 595, 170 N.Y.S.2d 795, 148 N.E.2d 136 (1958)). The law in New York therefore requires that collateral estoppel:

> should not be blindly applied ... on the basis of a rigid rule; each case must be examined to determine whether, under

all the circumstances, the party said to be estopped was not unfairly or prejudicially treated in the litigation in which the judgment sought to be enforced was rendered.

*Read v. Sacco*, 49 A.D.2d 471, 375 N.Y.S.2d 371, 375 (1975).

### b. Administrative Determination Requirements

#### i. In general

Two preliminary considerations are noted here, although not at issue in the instant motion. First, issue preclusive effect will only be given to those quasi-judicial administrative determinations "rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law." *Ryan v. New York Telephone Co.*, 478 N.Y.S.2d at 825–26, 467 N.E.2d at 489–90; *Allied Chemical v. Niagara Power Corp.*, 532 N.Y.S.2d at 232, 528 N.E.2d at 155 ("the court must make the threshold determination that the agency has the statutory authority to act adjudicatively"); *Bartholomew v. State of New York Insurance Department*, 97 A.D.2d 673, 469 N.Y.S.2d 219 (1983); *Green v. Ingber*, 80 A.D.2d 928, 437 N.Y.S.2d 761 (1981); *Newsday, Inc. v. Ross*, 80 A.D.2d 1, 437 N.Y.S.2d 376 (1981); *see* 2 N.Y.Jur.2d *Administrative Law* § 152 at 238–39 (1979). It has been explained:

> Whenever any tribunal is vested with power to conduct a hearing and decide an issue, whether it be a board, commission, agency or the like, its determination is in general entitled to the same treatment that a duly rendered judicial judgment gets.

D. Siegel, *New York Practice* § 456 at 603 (1978) [hereinafter "Siegel"].

New York law in this regard reflects the general principles of collateral estoppel enunciated by the Supreme Court. *United States v. Utah Construction & Mining Co.*, 384 U.S. at 422, 86 S.Ct. at 1560 ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose."). Neither Cohen nor Perino dispute that the Human Rights Division, in issuing its decision and judgment against Cohen, acted as a quasi-judicial administrative agency within its jurisdictional bounds.

The second preliminary consideration concerns the requirement that the determination claimed as issue preclusive in the latter proceeding must be final. *Ryan v. New York Telephone Co.*, 478 N.Y.S.2d at 826, 467 N.E.2d at 490; *Bernstein v. Birch Wathen School*, 421 N.Y.S.2d at 575. Under New York law, collateral estoppel necessitates a final judgment on the merits. The general rule is that an order is final as of the date it is rendered. The fact that no appeal has been taken does not divest a judgment of its finality in New York. An unreviewed determination by a state administrative law judge, as presented in our case, is final under New York law and therefore "conclusive and binding on the courts." *Bernstein v. Birch Wathen School*, 421 N.Y.S.2d at 575.

#### ii. Burden of proof

Once these preliminary concerns are satisfied, the question of whether collateral estoppel applies turns on "the identity of the issues involved and whether there was a full and fair opportunity to litigate the issue in the prior proceeding." *Matter of Guimarales*, 510 N.Y.S.2d at 559, 503 N.E.2d at 115; *Winters v. Lavine*, 574 F.2d 46 (2d Cir.1978) (applying New York law); *Halyalkar v. Board of Regents*, 72 N.Y.2d 261, 532 N.Y.S.2d 85, 527 N.E.2d 1222 (1988); *Staatsburg Water Co. v. Staatsburg Fire District*, 72 N.Y.2d 147, 531 N.Y.S.2d 876, 527 N.E.2d 754 (1988); *Allied Chemical v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 532 N.Y.S.2d 230, 528 N.E.2d 153 (1988); *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984); *Capital Telephone Co. v. Pattersonville Telephone Co.*, 56 N.Y.2d 11, 451 N.Y.S.2d 11, 436 N.E.2d 461 (1982). *Board of Education v. New York State Human Rights Appeal Board*, 106 A.D.2d 364, 482 N.Y.S.2d 495

(1984); Siegel, § 462 at 610. The burden of establishing the "identity of the issues" is on the proponent of preclusion, whereas the party opposing preclusion must "establish the absence of a full and fair opportunity to litigate the issue in the prior action or proceeding." *Ryan v. New York Telephone Co.*, 478 N.Y.S.2d at 827, 467 N.E.2d at 491; *Capital Telephone Co. v. Pattersonville Telephone Co.*, 451 N.Y.S.2d at 14, 436 N.E.2d at 464; *Schwartz v. Public Administrator of County of Bronx*, 298 N.Y.S.2d at 962, 246 N.E.2d at 730; *Willer v. New York State Board of Regents*, 475 N.Y.S.2d at 657.[3]

### iii. Full and fair opportunity

The "first inquiry" is whether the collateral estoppel is being used "against one who has already had his day in court." Siegel, § 462 at 610. The court must give the party opposing collateral estoppel the "opportunity to place on the record those items which he believes demonstrate his lack of a full and fair opportunity to litigate in the prior proceeding." *Willer v. New York State Board of Regents*, 475 N.Y.S.2d at 658. Thus, where a party can show he or she was not afforded an opportunity to litigate no collateral estoppel attaches. *Schwarz v. Schnipper*, 87 A.D.2d 510, 447 N.Y.S.2d 488, 490 (1982).

Under New York law, the doctrine of collateral estoppel, requires that "in every case the question of fairness—an inherent element of due process—in the application of the doctrine must be the crowning consideration." *Read v. Sacco*, 375 N.Y.S.2d at 375. Fairness "implies that the litigant in the prior proceedings had full opportunity to contest the decision now invoked against him." *Id.*

This review reflects the concerns often expressed by the Supreme Court. Although from *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1877) onward, the Supreme Court has "consistently emphasized the importance of the related doctrines of res judicata and collateral estoppel in fulfilling the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction," *Kremer v. Chemical Construction Corp.*, 456 U.S. at 466–67 n. 6, 102 S.Ct. at 1889 n. 6. Collateral estoppel is a "narrow doctrine" that may only properly be applied when certain conditions are met. *Matter of Coan*, 72 B.R. 483, 485 (Bankr.M.D.Fla. 1987); *Montana v. United States*, 440 U.S. at 155, 99 S.Ct. at 974. "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Montana v. United States*, 440 U.S. at 164 n. 11, 99 S.Ct. at 979 n. 11; *Kremer v. Chemical Construction Co.*, 456 U.S. at 480–81, 102 S.Ct. at 1897 ("We have previously recognized that the judicially created doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue."); *e.g., Allen v. McCurry*, 449 U.S. at 95, 101 S.Ct. at 415 ("But one general limitation the Court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case."); *United States v. Utah Construction &*

3. The rationale for the allocation of this burden is explained in the following:

> In the application of collateral estoppel with respect to administrative determinations, the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding. As we said in *Schwartz [v. Public Administrator of County of Bronx*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969)], "[t]his apportionment of the burdens is both fair and

necessary. Otherwise much of the value of collateral estoppel will be lost." Indeed, this apportionment accords, on the one hand, with the burden generally imposed on the moving party to make a prima facie demonstration of entitlement to summary judgment and, on the other hand, with the burden placed on the opposing party to establish the necessity for a trial or on any party attempting to rebut the presumptive regularity of prior judicial and administrative proceedings.

*Ryan v. New York Telephone Co.*, 478 N.Y.S.2d at 827, 467 N.E.2d at 491 (citations omitted).

*Mining Co.,* 384 U.S. at 422, 86 S.Ct. at 1560.

The "demands of due process," however, "do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective." *Opp Cotton Mills, Inc. v. Administrator,* 312 U.S. 126, 152–53, 61 S.Ct. 524, 536, 85 L.Ed. 624 (1941); *Bray v. New York Life Insurance,* 851 F.2d at 64–65. As the Second Circuit observed, the "proverbial 'right to a day in court' does not mean the actual presentation of the case in the context of a formal, evidentiary hearing, but rather 'the right to be duly cited to appear and to be afforded an opportunity to be heard.'" *Mitchell v. National Broadcasting Co.,* 553 F.2d 265, 271 (2d Cir.1977) (quoting *Olsen v. Muskegon Piston Ring Co.,* 117 F.2d 163, 165 (6th Cir. 1941)).

Although "no single model of procedural fairness, let alone a particular form of procedure" is required, *Kremer v. Chemical Construction Co.,* 456 U.S. at 483, 102 S.Ct. at 1898, New York courts have tried to identify some factors:

> The question as to whether a party has had a full and fair opportunity to contest a prior determination cannot be reduced to a formula. It cannot, for instance, be resolved by a finding that the party against whom the determination is asserted was accorded due process in the prior proceeding. The point of inquiry, of course, is not to decide whether the prior determination should be vacated but to decide whether it should be given conclusive effect beyond the case in which it was made.

*Gilberg v. Barbieri,* 441 N.Y.S.2d at 51, 423 N.E.2d at 809 (citation omitted).

The determination of whether there has been a full and fair opportunity to litigate in the prior action "requires an exploration of the various elements which make up the realities of litigation." *Schwartz v. Public Administrator of County of Bronx,* 298 N.Y.S.2d at 961, 246 N.E.2d at 729. Among the factors to be considered in determining whether a party has had his day in court are:

> [T]he nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation.

*Ryan v. New York Telephone Co.,* 478 N.Y.S.2d at 827, 467 N.E.2d at 491; *Gilberg v. Barbieri,* 441 N.Y.S.2d at 51, 423 N.E.2d at 809; *Schwartz v. Public Administrator of County of Bronx,* 298 N.Y.S.2d .at 961, 246 N.E.2d at 729; Siegel, § 467 at 618–23.

In addition, the vigor of the defense in the first action and differences in the burdens of proof in the prior and subsequent litigation are also examined by the courts in New York. Siegel, § 467 at 618–23. As New York's Court of Appeals recently warned:

> Collateral estoppel is an elastic doctrine and the enumeration of these elements is intended as a framework, rather than a substitute, for analysis. For example, the question whether a party had a full and fair opportunity to contest the prior decision is not answered simply by reference to the procedural benefits available in the first forum or by a conclusion that the requirements of due process were satisfied. Instead, the analysis requires consideration of "the realities of litigation", such as recognition that if the first proceeding involved trivial stakes, it may not have been litigated vigorously.
>
> In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings.

*Staatsburg Water Co. v. Staatsburg Fire District,* 531 N.Y.S.2d at 878, 527 N.E.2d at 756 (citations omitted).

■ The record before this court indicates that Cohen sustained his burden of establishing that he lacked a full and fair opportunity to litigate in the prior proceeding. The failure to have a full and fair opportunity to contest the issues at the administrative hearing resulted in the entry of judgment by default. It is not entry of a judgment by default that precludes collateral estoppel under New York law, but the means by which it was obtained.

### iv. Default judgments

A "judgment by default or by consent, such as a judgment by confession, must be given res judicata effect, precluding new suit on the same claim." Siegel, § 451 at 597. The "more difficult question" is whether a default judgment should be given the "more influential effects of collateral estoppel as well." *Id.* New York answers this question in the affirmative: default judgments are given collateral estoppel effect. *Id.; In re Iannelli,* 12 B.R. 561, 563 n. 6 (Bankr.S.D.N.Y.1981). Professor Siegel explains:

A collateral estoppel lies for any issue duly pleaded in and legitimately a part of the action in which the default was suffered.... Actual contest is therefore unnecessary in order for a judgment to get collateral estoppel effect; the showing required is only that the issues were necessary to the determination, contested or not, and this is true in New York of both the default judgment and the consent judgment.

Siegel, § 451 at 597–98.

Despite some prior case law to the contrary,[4] the Second Circuit has held that a bankruptcy court must give preclusive effect to a state court default judgment to the same extent as would a New York court. *Kelleran v. Andrijevic,* 825 F.2d 692 (1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988). A bankruptcy court "may look beyond a state court default judgment where the judgment was procured by collusion or fraud, *Margolis v. Nazareth Fair Grounds & Farmers Market,* 249 F.2d 221, 223–25 (2d Cir.1957) or where the rendering court lacked jurisdiction, *Heiser v. Woodruff,* 327 U.S. 726 [66 S.Ct. 853, 90 L.Ed. 970] (1946)." *Id.* at 694. The rationale of giving default judgments issue preclusive effect is aptly explained in the following:

Collateral estoppel applies only to those issues which were "actually" or "fully litigated" in the prior action. However, this rule does not refer to the quality or quantity of argument or evidence addressed to an issue. It requires only two things: first, that the issue has been effectively raised in the prior action, either in the pleadings or through development of the evidence and argument at trial or on motion; and second, that the losing party has had a "fair opportunity procedurally, substantively, and evidentially" to contest the issue. The general rule therefore is that subject to these restrictions default judgments do constitute res judicata for purposes of both claim preclusion and issue preclusion (collateral estoppel).

*Overseas Motors, Inc. v. Import Motors Limited, Inc.,* 375 F.Supp. at 516 (quoting *Eisel v. Columbia Packing Co.,* 181 F.Supp. 298, 301 (D.Mass.1960)).

Other jurisdictions have similarly accorded collateral estoppel effect in a subsequent bankruptcy proceeding to a judgment taken by default. *E.g., In re Eadie,* 51 B.R. 890 (Bankr.E.D.Mich.1985); *In re Byard,* 47 B.R. 700 (Bankr.M.D.Tenn.1985).

---

**4.** *E.g., In re Capparelli,* 33 B.R. 360 (Bankr.S.D. N.Y.1983); *In re Joseph,* 22 B.R. 319 (Bankr.E.D. N.Y.1982); *In re Iannelli,* 12 B.R. 561 (Bankr.S. D.N.Y.1981).

A certain "reluctance" among the other jurisdictions to accord collateral estoppel effect to a default judgment exists. *Overseas Motors, Inc. v. Import Motors Limited, Inc.,* 375 F.Supp. 499,

516–17 (E.D.Mich.1974), *aff'd,* 519 F.2d 119 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975); *e.g., Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981); *Matter of McMillan,* 579 F.2d 289 (3d Cir.1978); *In re Levy,* 87 B.R. 107 (Bankr.N.D.Cal.1988); *In re Sheahan,* 87 B.R. 67 (Bankr.E.D.Mo.1988); *In re Barigian,* 72 B.R. 407 (Bankr.C.D.Cal.1987).

The important due process criterion is the opportunity to litigate; it is irrelevant that a party failed to take advantage of that opportunity. For example, the "realities" of the prior litigation may " 'have had the practical effect of discouraging or deterring a party from fully litigating the determination now asserted against him.' " *Ryan v. New York Telephone Co.*, 478 N.Y.2d at 827, 467 N.E.2d at 491 (quoting *People v. Plevy*, 52 N.Y.2d 58, 65, 436 N.Y.S.2d 224, 228, 417 N.E.2d 518, 522 (1980)).

In our case it is clear that Cohen was effectively denied the opportunity to appear before the Human Rights Division and defend against Perino's charges. His failure to appear did not result from a refusal to participate, but from an inability to participate for the following reasons.

The events which led to Perino's discrimination complaint occurred in December of 1982. It was nearly four years later that the hearing was held, and upon only nine-days' notice to Cohen, thus supporting Cohen's assertion that he believed the entire matter had been settled nearly three years earlier. The time limits found in the Human Rights Law, and under which the Human Rights Division derives its procedures, have been construed to be "directory, not mandatory." *Moskal v. State of New York*, 36 A.D.2d 46, 319 N.Y.S.2d 358, 361 (1971). Thus, the "mere passage of time normally will not constitute substantial prejudice in the absence of some showing of actual injury to the respondent." *Sarkisian Brothers, Inc. v. State Division of Human Rights*, 48 N.Y.2d 816, 424 N.Y.S.2d 125, 126, 399 N.E.2d 1146, 1147 (1979). Where, however, there has been a protracted delay between the alleged incident of unlawful discrimination and a final determination by the Human Rights Division, the New York courts will find that this "constitutes prejudice as a matter of law." *State Division of Human Rights v. Gannett Co.*, 61 A.D.2d 1134, 402 N.Y.S.2d 889, 891 (1978); *e.g., State Division of Human Rights v. Bethlehem Steel Corp.*, 86 A.D.2d 977, 448 N.Y.S.2d 331, 332 (1982) (seven-year delay constitutes prejudice as a matter of law); *State Division of Human Rights v. Board of Education of West Valley Central School District*, 53 A.D.2d 1043, 386 N.Y.S.2d 166, 168 (1976), *aff'd*, 42 N.Y.2d 862, 397 N.Y.S.2d 791, 366 N.E.2d 878 (1977) (three-year delay constitutes prejudice); *Hillside Housing Corp. v. State Division of Human Rights*, 44 A.D.2d 539, 353 N.Y.S.2d 460 (1974) (nearly three-year delay required dismissal); *State Division of Human Rights v. Rinas*, 42 A.D.2d 388, 348 N.Y.S.2d 422, 424 (1973) (three-year delay is "inordinate"). "[W]henever a delay in an administrative adjudication significantly or deliberately interferes with a party's capacity to prepare or to present his case, the right to due process has been violated." *O'Keefe v. Murphy*, 38 N.Y.2d 563, 381 N.Y.S.2d 821, 823, 345 N.E.2d 292, 294 (1976).

It is Cohen's inability to prepare adequately for the hearing after a three-year hiatus in the proceedings, as well as the Division's refusal to adjourn the hearing to enable him to locate documents and retain counsel, that appear to have impaired his opportunity to defend. This finding is further supported by Cohen's affidavits which also allege that his failure to appear at the December, 1986 hearing was in part due to a physical ailment and the inability to obtain transportation to the hearing which was held nearly 100 miles from his home. Despite the Division's denial of his first request for an adjournment of the hearing, Cohen nevertheless pursued his request for an adjournment on the very day of the hearing, but to no avail.

The role and competence of counsel in the prior litigation is another factor considered by New York courts in determining whether collateral estoppel should pertain. *E.g., Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984); *Gilberg v. Barbieri*, 53 N.Y.2d 285, 441 N.Y.S.2d 49, 423 N.E.2d 807 (1981); *Schwartz v. Public Administrator of County of Bronx*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969); *Board of Education v. New York State Human Rights Appeal Board*, 106 A.D.2d 364, 482 N.Y.S.2d 495 (1984). "In testing the fairness of the earlier litigation," one

court commented, "the presence of counsel in behalf of the losing party, the regularity of the procedures [and] the adequacy of those procedures in the particular case ... are all significant and helpful guides." *Read v. Sacco*, 375 N.Y.S.2d at 375 (citations omitted).

This is not a case where the litigant simply chose to ignore a proceeding or "freely and knowingly choose not to appear with legal counsel." *Ryan v. New York Telephone Co.*, 478 N.Y.S.2d at 828, 467 N.E. 2d at 492. As one court observed:

> If a party who was granted the opportunity to participate in a hearing and refused to do so without a legitimate reason could then argue that the judgment could not be given preclusive effect, that party would undermine the entire foundation of collateral estoppel.

*O'Hara v. Board of Education of Vocational Schools*, 590 F.Supp. 696, 702 (D.N. J.1984), *aff'd*, 760 F.2d 259 (3d Cir.1985). Cohen in fact sought an adjournment for the purpose of obtaining counsel. In addition, considering the four-year delay between the alleged discrimination and the hearing, coupled with Cohen's misapprehension that the entire matter had been settled, it appears that the request for an adjournment, albeit the first, was reasonable under the circumstances. *See O'Hara v. Board of Education of Vocational Schools*, 590 F.Supp. 696 (D.N.J.1984), *aff'd*, 760 F.2d 259 (3d Cir.1985) (where a plaintiff never adequately explained her absence, she could not assert that she was not afforded an adequate opportunity to litigate).

Not only was Cohen physically impeded by a medical condition from attending the hearing, he was also logistically at a disadvantage. Cohen states that although the settlement negotiations took place in White Plains, which was more accessible to him, the hearing itself took place in New York City, a more distant venue and one that he did not choose. *Clemens v. Apple*, 492 N.Y.S.2d at 21, 481 N.E.2d at 561. Unable to drive himself, Cohen testified that due to the short notice of the hearing, and even shorter notice of the denial of his request for an adjournment, he was unable to secure other means of transportation.

The "nature of the forum and the importance of the claim in the prior litigation," also merit consideration. *Ryan v. New York Telephone Co.*, 478 N.Y.S.2d at 827, 467 N.E.2d at 491. In *Gilberg v. Barbieri*, 53 N.Y.2d 285, 441 N.Y.S.2d 49, 423 N.E.2d 807 (1981), the New York Court of Appeals decided that collateral estoppel would not attach to a conviction for the petty offense of harassment in a subsequent civil suit for assault concerning the same incident. The decision in *Gilberg* was premised upon the "brisk pace" at which the prior litigation was held and "the manifest fact that the debtor did not avail himself of the prior forum, and the lack of any suggestion that debtor was aware of the possibility that a conviction on a petty criminal hearing might later be used in a civil suit seeking damages." *Clemens v. Apple*, 492 N.Y.S. 2d at 21, 481 N.E.2d at 561.

We also note that the "substantial evidence" standard of proof used by the Human Rights Division is considerably less than the "fair preponderance" or "clear and convincing" standard generally required to sustain dischargeability objections before the bankruptcy court. This disparity in the quantum of proof resembles the allusion in *Gilberg* to the "brisk pace" at which the prior litigation was disposed.[5]

---

**5.** Our case concerns only the collateral estoppel effect of a default judgment. Under New York law, a party's default is deemed to be an admission of all the factual allegations in the complaint. The requisite standard of proof is therefore not applied, as the facts are admitted upon default.

Had Cohen defended and lost before the Human Rights Division, its finding against Cohen need only be supported by "substantial evi-

dence." Although "[m]arked by its substance—its solid nature and ability to inspire confidence," substantial evidence nevertheless is something "less than a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt." *300 Gramatan Avenue Associates v. State Division of Human Rights*, 45 N.Y.2d 176, 408 N.Y.S.2d 54, 379 N.E.2d 1183 (1978); *State Division of Human Rights v. Columbia University*, 39 N.Y.2d 612,

In sum, Cohen was deprived of a reasonable opportunity to participate in the prior hearing. Accordingly, he satisfied his burden of going forward with sufficient evidence to establish that he was denied a full and fair opportunity to appear and defend before the Human Rights Division.

### v. Identity of issues

■ Assuming, nevertheless, that Cohen was afforded a full and fair opportunity to participate in the prior hearing, the burden of showing that the issues presented to that tribunal were identical to those to be litigated here was not met by Perino.

In New York, the *"sine qua non* to the invocation of the collateral estoppel doctrine is that the 'issue on which collateral estoppel is sought is the same as the one disposed of in the earlier action.' " *Green v. Ingber,* 437 N.Y.S.2d at 763 (quoting Siegel, § 462 at 610). The same requirement pertains to administrative determinations claimed to be issue preclusive in a subsequent action. *Halyalkar v. Board of Regents,* 532 N.Y.S.2d at 88, 527 N.E.2d at 1224–25; *Silberman v. Penn General Agencies of New York, Inc.,* 406 N.Y.S.2d at 94 ("the issue before the administrative body and the court must be the same before collateral estoppel will bar relitigation"). As the New York Court of Appeals recently explained:

> For a question to have been actually litigated so as to satisfy the identicality requirement under *Schwartz,* it must· have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding. The rule is founded on considera-

tions of fairness and recognizes that if preclusive effect were given to issues not truly adjudicated the result would be to discourage compromises and to accord them consequences which the parties neither intended nor foresaw.

*Halyalkar v. Board of Regents,* 532 N.Y.S. 2d at 89, 527 N.E.2d at 1226.

It makes no difference whether the issue is legal or factual, or concerns "ultimate" or "ancillary" factfinding. Any finding essential to the judgment becomes a component of that judgment and thereby lends itself to an estoppel. Siegel, §§ 463–464 at 612–14; *Ryan v. New York Telephone,* 478 N.Y.S.2d at 826, 467 N.E.2d at 490 ("What is controlling is the identity of the issue which has necessarily been decided in the prior action or proceeding."). Thus, the court's inquiry into the nature of the issue previously litigated must be a "careful one." Siegel, § 462 at 611.

In the bankruptcy setting, the identity of issues is the "most difficult element" of the collateral estoppel test. *In re Barigian,* 72 B.R. at 410. This is "particularly true in dischargeability proceedings under ... [Code Section] 523(a)(6)." Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* 58 Am.Bankr.L.J. 349, 358–59 (1984); *In re Spector,* 22 B.R. at 231 (the "most intricate element of the test is the requisite 'identity of issue' component"). Bankruptcy courts require that the "precise issue" in the dischargeability determination be previously decided before it will be given preclusive effect. *In re Mueller,* 34 B.R. 869, 871 (Bankr.D.Colo. 1983). "Any reasonable doubt as to what was decided by a prior judgment," as one

---

385 N.Y.S.2d 19, 350 N.E.2d 396 (1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977).

Although the bankruptcy courts have "split" over the requisite standard of proof to sustain a dischargeability objection under Code Section 523(a)(6), *In re Peoni,* 67 B.R. 288, 290 (Bankr.S. D.Ind.1986), most courts require "clear and convincing" evidence. *E.g., In re Dean,* 79 B.R. 659 (Bankr.N.D.Tex.1987); *In re Auto Outlet, Inc.,* 71 B.R. 674 (Bankr.D.Utah 1987); *In re Fulgham,* 70 B.R. 168 (Bankr.D.N.M.1986); *In re Nelson,* 67 B.R. 491 (Bankr.D.Minn.1985); *In re Eberle,* 61 B.R. 638 (Bankr.D.Minn.1985); *In re Alexander,* 58 B.R. 160 (Bankr.W.D.Wis.1984); *In re*

*Wright,* 57 B.R. 961 (Bankr.N.D.Ga.1986); *In re Capparelli,* 33 B.R. 360 (Bankr.S.D.N.Y.1983). Other courts require a "fair preponderance" of the evidence as the standard of proof. *E.g., Combs v. Richardson,* 838 F.2d 112 (4th Cir. 1988); *In re Dubian,* 77 B.R. 332 (Bankr.D.Mass. 1987); *In re Vandrovec,* 61 B.R. 191 (Bankr.D.N. D.1986).

Where a lower standard of proof than that required for dischargeability purposes has been used to support the prior determination, bankruptcy courts have refused to accord collateral estoppel effect to that determination. *E.g., In re D'Annolfo,* 54 B.R. 887 (Bankr.D.Mass.1985).

writer cautions, "should be resolved against using it as an estoppel." B. Russell, *Bankruptcy Evidence Manual* § 4 at 5.

Code Section 523(a)(6) provides that a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. The phrase "willful and malicious" has often been termed "amorphous." *E.g., In re Dubian*, 77 B.R. at 336; *In re Cooney*, 8 B.R. 96, 98 (Bankr.W.D.Ky.1980). Nevertheless, Code Section 523(a)(6) requires proof not only of the debtor's willfulness, but of malice as well. Both are "two distinct characteristics which should not be lumped together." *In re Vandrovec*, 61 B.R. 191, 196 (Bankr.D.N.D.1986); *In re Hoffman*, 70 B.R. 155, 161 (Bankr.W.D. Ark.1986) (willful and malicious are "separate elements"); *In re Capparelli*, 33 B.R. at 364; *In re DeRosa*, 20 B.R. 307, 313 (Bankr.S.D.N.Y.1982); *In re McGiboney*, 8 B.R. 987, 989 (Bankr.N.D.Ala.1981) ("both elements must be present").

The legislative notes to Code Section 523(a)(6) state that "willful" means "deliberate or intentional." S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5865; H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5963, 6320–21. No definition, however, for the term "malicious" appears in the legislative history. Instead, the legislative notes provide:

> To the extent that *Tinker v. Colwell*, 139 U.S. 473 (1902), held that a less strict standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

*Id.*

Confusion surrounds this legislative statement. As this court previously noted, "There is some question, however, as to whether the term 'malicious' as used in Code § 523(a)(6) retains the same meaning as was ascribed to it under former [Bankruptcy Act] § 17a(2)." *In re DeRosa*, 20 B.R. at 313. One commentator explained:

In addressing the question, bankruptcy courts have been unable to resolve whether a debtor's actions must be "deliberate or intentional" in order to be "willful and malicious," or whether a debtor who acts with "reckless disregard" is also "willful and malicious." ... Some courts say that while "willful" means "deliberate or intentional," "malicious" may be constructive: the debtor acts "maliciously" when he knows that the harm is certain or substantially certain to occur, without actually acting in order to bring about the harm. Others hold that "deliberate or intentional" means that the injury itself must be intentional. ·

Comment, *Accidental "Willful and Malicious Injury": The Intoxicated Driver and Section 523(a)(6)*, Bankr.Dev.J. 135, 135–36 (1984).

There remains a split in authority concerning the interpretation of the phrase "willful and malicious." *In re Cecchini*, 780 F.2d 1440, 1442 (9th Cir.1986). One interpretation of this phrase requires proof only of an intentional act that necessarily causes injury. *E.g., Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 156, 98 L.Ed.2d 112 (1988); *In re Cecchini*, 780 F.2d 1440 (9th Cir.1986); *In re Gault*, 83 B.R. 468 (Bankr. S.D.Ohio 1988); *In re Pereira*, 44 B.R. 248 (Bankr.D.Mass.1984); *In re DeRosa*, 20 B.R. 307 (Bankr.S.D.N.Y.1982); *Matter of Friedenberg*, 12 B.R. 901 (Bankr.S.D.N.Y. 1981); *In re McGiboney*, 8 B.R. 987 (Bankr.N.D.Ala.1981). Other courts espouse a more stringent test, i.e., to be nondischargeable the debt must have resulted from an act done with the intent to cause injury. *E.g., In re Hawley*, 65 B.R. 241 (D.Colo.1986); *In re Lane*, 76 B.R. 1016 (Bankr.E.D.Pa.1987); *In re Auto Outlet, Inc.*, 71 B.R. 674 (Bankr.D.Utah 1987); *In re Hoffman*, 70 B.R. 155 (Bankr.W.D. Ark.1986); *In re Fercho*, 39 B.R. 764 (Bankr.D.N.D.1984); *In re Meyer*, 7 B.R. 932 (Bankr.N.D.Ill.1981).

On this motion for summary judgment Perino failed to establish, even under the looser standard, that Cohen's actions

amounted to a willful and malicious injury within the meaning of Code Section 523(a)(6).

Cohen was found to have violated Sections 296(2)(a) and 296(14) of the Human Rights Law. Pursuant to Section 300 of the Human Rights Law, N.Y.Exec.Law § 300 (McKinney 1988), these provisions must be "construed liberally" to accomplish the stated purposes of the Human Rights Law. "In enacting the Human Rights Law," one court observed, "our State Legislature, in a preamble, minced no words in declaring that the discriminatory practices it was interdicting violated the fundamental principles underlying a free society and threatened the peace and tranquility of the State." *Cullen v. Nassau County Civil Service Commission*, 53 N.Y.2d 492, 442 N.Y.S.2d 470, 472, 425 N.E.2d 858, 860 (1981).

The New York Division of Human Rights is an administrative agency statutorily vested with "plenary adjudicatory powers." *Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 266 n. 1 (2d Cir.1977). Although empowered to award a variety of sanctions, the Human Rights Division lacks the authority to award punitive damages for unlawful discriminatory practices; only compensatory damages may be awarded. N.Y.Exec.Law § 297(4)(c) (McKinney 1988); *Moskal v. State of New York*, 319 N.Y.S.2d at 362. The form complaint issued by the Division pursuant to Executive Law § 297(1) requires that the facts relating to the alleged discriminatory practice be detailed but makes no provision for a "request for particularized relief." *Cullen v. Nassau County Civil Service Commission*, 442 N.Y.S.2d at 472 n. 1, 425 N.E.2d at 860 n. 1.

Unlike the New York Civil Rights Law, which is the state's equal protection statute, purposeful discrimination is not a "necessary element" of a cause of action under Section 296 of the Human Rights Law. *People v. New York City Transit Authority*, 59 N.Y.2d 343, 465 N.Y.S.2d 502, 505, 452 N.E.2d 316, 319 (1983). Whereas a determination that one's equal protection rights have been violated requires the find-

ing of a discriminatory purpose or intent, *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), "it is not necessary, in order to find a discriminatory practice [under New York's Human Rights Law], to conclude that the standards resulting in such discriminatory practice, were adopted with the intent to discriminate." *State Division of Human Rights v. New York City Department of Parks and Recreation*, 38 A.D.2d 25, 326 N.Y.S.2d 640, 642–43 (1971); *CUNY–HosTOS Community College v. State Human Rights Appeal Board*, 59 N.Y.2d 69, 463 N.Y.S.2d 173, 178–79, 449 N.E.2d 1251, 1256–57 (1983); *Cullen v. Nassau County Civil Service Commission*, 442 N.Y.S.2d at 472–73, 425 N.E.2d at 859–61; *Imperial Diner, Inc. v. State Human Rights Appeal Board*, 52 N.Y.2d 72, 436 N.Y.S.2d 231, 234, 417 N.E.2d 525, 528 (1980); *State Division of Human Rights v. Kilian Manufacturing Corp.*, 35 N.Y.2d 201, 360 N.Y.S.2d 603, 608, 318 N.E.2d 770, 773 (1974) ("Nor does a finding of a discriminatory practice necessarily import a willful and actual intent to evade the law...."). The New York Human Rights Law attempts to redress the consequences of, rather than the motivation behind, unlawful discriminatory practices. As one court explained:

> One intent on discriminating "cannot be expected to declare or announce his purpose. Far more likely is it that he will pursue his discriminatory practices in ways that are devious, by methods subtle and elusive—for we deal with an area in which 'subtleties of conduct ... play no small part.'"

*Imperial Diner, Inc. v. State Human Rights Appeal Board*, 436 N.Y.S.2d at 234, 417 N.E.2d at 528 (quoting *Matter of Holland v. Edwards*, 307 N.Y. 38, 45, 119 N.E.2d 581 (1954)).

Perino, however, contends that the Human Rights Division's award of compensatory damages necessarily reflects a finding that Cohen intentionally discriminated against him and his guide dog. In support of this contention, Perino cites *Batavia Lodge No. 196, L.O.M. v. New York State Division of Human Rights*, 35 N.Y.2d 143,

359 N.Y.S.2d 25, 316 N.E.2d 318 (1974). *Batavia Lodge* concerned several black patrons who were refused service at a bar in a private club and verbally abused because of their race. The Human Rights Commission awarded each of the patrons $250 in compensatory damages for mental anguish suffered as a result of their discriminatory treatment at the bar. In upholding the award of compensatory damages, the court stated that such awards effectuate the state's policy against discrimination and that they are particularly appropriate where "the discriminatory act is intentionally committed." *Batavia Lodge No. 196, L.O.M. v. New York State Division of Human Rights*, 359 N.Y.S.2d at 28, 316 N.E. 2d at 320.

Although a preliminary reading of *Batavia Lodge* may give the impression that an award of compensatory damages reflects the intentional nature of the discriminatory acts, the New York Court of Appeals subsequently found this interpretation to be incorrect. *Cullen v. Nassau County Civil Service Commission*, 53 N.Y.2d 492, 442 N.Y.S.2d 470, 425 N.E.2d 858 (1981). After first noting that compensatory damages may be awarded not only to compensate for out of pocket losses, but may include compensation for "less tangible injuries as humiliation and mental anguish," the court continued:

> But the fact that compensation may be allowed for emotional trauma does not depend on a showing that the discrimination which produced it was intentional. The overriding concern of the Legislature in pursuing the goals it enunciated had to have been the pragmatics of the consequences of challenged practices rather than their motivations. Beyond that, *it would be unrealistic to demand proof of intention*. By definition, under a facially neutral policy, no per se intent to discriminate can be expected to exist. To require such proof as a prelude to the fashioning of an appropriate remedy in such circumstances would be to put instances of discrimination whose subtlety may but add to their pervasiveness beyond its reach.

*Batavia Lodge* was not to the contrary.... "[P]articularly ... where ... the discriminatory act is intentionally committed," a lesser standard of proof [of damages] may suffice, we did not suggest that such intent was a *sine qua non*.

*Cullen v. Nassau County Civil Service Commission*, 442 N.Y.S.2d at 472–73, 425 N.E.2d at 860–61 (emphasis added) (quoting *Batavia Lodge No. 196, L.O.M. v. New York State Division of Human Rights*, 359 N.Y.S.2d at 26, 316 N.E.2d at 319).

This is in stark contrast to the findings that must be made to sustain a dischargeability complaint under Code Section 523(a)(6). In recognition of the Bankruptcy Code's "fresh start" policy for honest debtors, the bankruptcy court perceives nondischargeability as a "punitive exception" to this policy and thus "should be found reluctantly." *Matter of Martonak*, 67 B.R. 727, 728 (Bankr.S.D.N.Y.1986). This fresh start policy has been articulated repeatedly by the Supreme Court. *E.g., Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971); *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 113, 27 L.Ed. 2d 124 (1970); *Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Williams v. United States Fidelity & Guaranty Co.*, 236 U.S. 549, 554–55, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915). Consequently, all exceptions to dischargeability are "narrowly construed" in the debtor's favor. *In re Danns*, 558 F.2d 114, 116 (2d Cir.1977); *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir.1975); *In re Hunt*, 30 B.R. 425, 436 (M.D.Tenn.1983); *In re Goux*, 72 B.R. at 357; *In re Barrup*, 37 B.R. 697, 699 (Bankr.D.Vt.1983); *In re West*, 21 B.R. 872, 875 (Bankr.M.D.Tenn. 1982); *Matter of Newmark*, 20 B.R. 842, 852–53 (Bankr.E.D.N.Y.1982). The Human Rights Division, on the other hand, is statutorily mandated to construe broadly the state's Human Rights Law. N.Y.Exec.Law § 300 (McKinney 1988).

Further, a determination by the Human Rights Division of unlawful discrimination does not require a finding that the discrimi-

nation was intentional, let alone malicious. The statutory provisions that Cohen was found to have violated require neither intent nor malice to sustain a finding of unlawful discrimination.

The decision of the administrative law judge lacks any finding of intent or malice, whereas this court requires proof of each under Code Section 523(a)(6). Furthermore, Perino's complaint failed to allege intent and malice. The complaint's essential accusation was that Cohen said Perino was not blind and that Perino's dog was not a true guide dog.

In addition, New York case law indicates that an award of compensatory damages by the Human Rights Division reflects no finding, either explicitly or implicitly, of intent or malice. Indeed, compensatory damages under New York law may be awarded without any showing of intent or malice. Further, the Human Rights Division is not empowered to make an award as a penalty. *Moskal v. State of New York*, 319 N.Y.S.2d at 362. A punitive damage award, however, necessarily requires a determination of culpability by the party against whom it is awarded. As one court noted, "[I]t is a general principle of the law of damages that to subject a wrongdoer to liability for exemplary damages, it *must* be found that he acted with actual malice, ill will, or conscious disregard of consequences to others." *Tillman v. Wheaton– Haven Recreation Association, Inc.*, 367 F.Supp. 860, 864 (D.Md.1973), *rev'd on other grounds*, 517 F.2d 1141 (4th Cir.1975).

Neither the underlying law, the administrative findings nor the plaintiff's complaint mentioned the elements of intent and malice, both of which are essential to support a finding of nondischargeability under Code Section 523(a)(6).

For all of the reasons discussed, the prior determination of the Human Rights Division does not preclude this court from deciding the bankruptcy issue, i.e., was Perino's "injury" caused by Cohen's "willful and malicious" conduct.

## IV. CONCLUSIONS OF LAW

1. This court has jurisdiction of this motion pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding as provided by 28 U.S.C. § 157(b)(2)(I).

2. The plaintiff has failed to sustain his burden of establishing that preclusive effect should be given to the prior determination of the New York Human Rights Division on the question of debt dischargeability.

3. Accordingly, Perino's motion for summary judgment is denied. The parties should be prepared to proceed at a pre-trial conference to be set by this court.

An appropriate order shall be entered in conformity herewith.